23 193
140 241

# Young *versus* Kimball.

1. If property be forcibly or clandestinely taken from the possession of one having a lien upon it, he may reclaim it as his property in any proper form, and replevin is such a form.

2. Livery-stable keepers, under the Act of 7th April, 1807, have a lien upon every horse delivered to them to be kept in their stable "for the expense of the keeping."

3. The right of lien for the keeping of several horses, composing two separate teams belonging to the same person, is a charge against the owner, secured by a lien upon all the horses, is joint and several, and one horse may be detained for the keeping of all of them.

4. Two teams of horses belonging to a mail contractor were kept at the stable of the plaintiff; one was removed, and the plaintiff detained the other for the keeping *of both. Held,* that he had a right to do so.

5. The circumstance that the horses were under the care of their driver, who used them from time to time in the course of his employment as the business required, was not inconsistent with the right of lien and did not impair it.

ERROR to the Common Pleas of *Tioga county.*

This was an action of *replevin,* by James Kimball *v.* John G. Young, for a span of sorrel horses. Kimball was an innkeeper, in Wellsboro', Tioga county. Young, the defendant in the *replevin,* was a contractor for carrying the mail twice a week between Wellsboro' and Coudersport in Potter county. He sub-let the contract to Cornelius Culp. Culp testified that he made an arrangement with Kimball to board him, and give him barn-room for horses, grain and hay, at a stipulated sum per week. He took care of the team himself. In part he found his own hay and oats. Had no contract with Kimball for the feed he bought of him. The arrangement was made with Kimball about the 1st of July, 1848. The two teams and driver of Culp were kept in part at Kimball's until about the middle of December next following, when both of the teams were sold under execution against Culp, one, a sorrel team, being sold in Coudersport on the 16th December, and the other, a black team, was sold in Wellsboro' on the 20th December. One of the teams usually ran on the east end of the route; and the other, the sorrel team, the one in controversy, usually ran on the west end of the route. Sometimes they were changed.

After the sale of the sorrel team, Young, the contractor, made a conditional purchase of it, so as to secure the use of it to carry the mail to Wellsboro', and he hired Culp or his son, as driver. This team was continued on the road, and was occasionally kept at Kimball's, as before, Culp sometimes procuring feed from Kimball, and sometimes procuring it elsewhere.

About 1st of February, 1849, the sorrel team being put into Kimball's stable, he refused to suffer it to be taken away until his

[Young v. Kimball.]

bill for the keeping of *both* of the teams, and for the boarding of the drivers, commencing about the 1st of July, 1848, and amounting to about $87.50, was paid. It was stated that, at the request of Young, an offer was made to pay for the keeping of the *sorrel horses*. On the 4th of February the horses were removed from Kimball's stable by Young, and put into another stable in Wellsboro'; and on the next day the writ of *replevin* was issued. The horses were subsequently sold under the provisions of the Act of 1807.

The defendant's counsel requested the Court to charge the jury:

1st. That the plaintiff had no lien, because the horses were not in his keeping, nor taken care of by him, but by Culp, in the premises occupied by him under special contract.

2d. That all liens for previous keeping were dissolved by plaintiff's voluntarily parting with the possession from time to time.

3d. That all prior liens were divested by the sheriff's sale.

4th. That the innkeeper's lien is specific, not general, and cannot be transferred from one horse to another, or made available to secure a balance of general account.

5th. That if the jury believe a tender was made and refused, for the amount of the bill chargeable to these horses, that would dissolve the lien, if any existed.

All of which points, except the third, were answered in the negative.

It was assigned for error,—1. That the Court erred in their answer to defendant's first, second, fourth, and fifth points. 2. In charging that the proper and reasonable charges of the plaintiff for keeping this, as also the other teams employed in running this route after December 16, 1848, as well as his reasonable charges for the board of the drivers from the same time, were a lien on these horses, and that the plaintiff might lawfully retain them for the payment of such reasonable charges. 3. In charging, that if the jury believe the horses were taken from the stable of plaintiff by the defendant, or through his procurement, without the knowledge or consent of the plaintiff, and under circumstances amounting in fact to a trespass, in such case the lien of the plaintiff as between the parties to this suit would follow and adhere to the horses—the plaintiff would have such a qualified property in them, and right of possession, as would in law enable him to sustain this action of *replevin*.

*Cone* and *Johnson*, for plaintiff in error.—The horses were not, in the language of the common law, "committed to an innkeeper;" nor in the language of the Act of Assembly, "delivered to him to be kept in his stables." The horse may be detained by an innkeeper for feed, but not for the feed of the driver: *Bacon's Ab.* "*Inns*," &c. If a horse be once parted with, the innkeeper cannot, on his coming in again, detain him for what was due before:

[Young v. Kimball.]

1 *Strange* 557, Jones v. Pearle; 2 *Esp. N. P.* 195; 8 *Mod.* 172;
3 *Hill* 488–492; 10 *Petersdorf* 430–1.

*Williston*, for defendant in error.—Culp was not a tenant of the stable.   It was contended that the lien of an innkeeper existed as well for the boarding and lodging of the traveller as for the feed of his horse.

The opinion of the Court was delivered by

LOWRIE, J.—It is not disputed that there was money due to Kimball, the plaintiff below, for the keeping of these horses; and if that fact gave him a lien upon them, it is immaterial what the Court said about the board of the driver, for any amount of lien would justify their detention.

His right to reclaim them, when forcibly or clandestinely taken from his custody, depended upon his right to detain them as against the taker, and replevin is a proper remedy in such a case.

The right of lien for the keeping of several horses of the same person at the same time is a charge; not against the horses, and therefore several and divided; but against the owner, secured by a lien upon all the horses, and therefore joint and several, and one horse may be detained for the keeping of all.

These principles dispose of all the points raised in the trial except one—Was there a right of lien?

The defendant was a mail carrier, and the plaintiff's inn was the place where he changed horses; so that the bill included charges for stable-room and supplies for two teams, and each of them was away from the plaintiff's stable twice a week.   It is supposed that the plaintiff lost all his right to lien for previous charges every time that he allowed the horses to be taken away from his stable.   Is it so?

Our Act of Assembly gives a lien to both innkeepers and livery-stable keepers for the expense of keeping horses: and it may be possible that this was not intended to change the common law right of innkeepers as such, and that, at common law, a lien would not, under these circumstances, be sustained.   But it was not at all as innkeeper that the plaintiff became entitled to assert this claim against the defendant, but as livery-stable keeper; for it was under an arrangement totally different from that which takes place in the entertainment of strangers and travellers.   It was a necessary part of that arrangement that the horses should be delivered to the defendant as they were needed, and this is part of the ordinary course of business of livery-stable keepers, and therefore must be consistent with the right of lien that belongs to the occupation.

We see no evidence that the defendant hired any part of the plaintiff's stable, or had any other control of the horses than is

[Young *v.* Kimball.]

common where the owner of horses at livery has his own driver to attend to them. This circumstance does not affect the right of lien.

Judgment affirmed.