ALFRED PAPINEAU *vs.* GEORGE H. WENTWORTH.
ROBERT T. PAINE *vs.* ALFRED PAPINEAU.

Suffolk.    Jan. 18. — Feb. 29, 1884.    C. ALLEN & HOLMES, JJ., absent.

A. boarded his horse at B.'s stable, his custom being to take the horse from the
stable each day and use it in his business, and return it to the stable at night.
On one occasion, a certain sum being due B. for the horse's board, A. did not
return the horse to the stable as usual, and B., upon finding the horse in A.'s
possession about three weeks afterwards, took possession of the horse under a
claim of a lien upon it, and left it in charge of his agent, who, with A., was to
return the horse to the stable on the next day.   On that day, A. told B.'s agent
that he had concluded not to take the horse to B., but was going to see him.
B.'s agent returned with A., leaving the horse behind.   A. offered B. a certain
sum in settlement of his claim, which he refused to accept, and A. then prom-
ised to send the horse to B. on the next day, which he did not do.   *Held,* on a
petition to enforce a lien upon the horse, under the Pub. Sts. *c.* 192, § 32, that
there was evidence that B. had waived his lien.

THE FIRST CASE was a petition, filed September 6, 1882,
under the Pub. Sts. *c.* 192, § 32, to enforce a lien upon a horse.

THE SECOND CASE was an action of replevin to recover the
same horse.   The writ was dated September 7, 1882.

The actions were tried together in the Superior Court, with-
out a jury, before *Staples,* J., who allowed a bill of exceptions,
in substance as follows:

Papineau kept a boarding and livery stable in Boston.   Went-
worth, on February 22, 1882, brought said horse to Papineau's
stable and placed it in his care to be boarded.   From that
time until June 29, 1882, Papineau boarded and took care of
the horse at his stable, in the manner usual in such stables,
and harnessed and unharnessed it as Wentworth requested, al-
lowing him to use it in his business as often as he wished.
Wentworth being lame, the usual mode was for Papineau to
send the horse to him at his boarding-place, as he requested,
and when Wentworth returned he usually drove to the stable,
and some one in the employ of Papineau would drive him to his
boarding-place and take the horse back to the stable.   Went-
worth's business was that of selling plants and trees.   Occasion-
ally he would be away with the horse over night, and once
during that period he remained away with the horse in his
business some five or six days; in all, about ten days during

FEBRUARY, 1884.

said period. At the time the horse was so brought to the stable, the price was understood to be $5 per week; but there were no stipulations as to the time the horse was to be boarded, or as to the times or modes of payment, or as to security, or as to claiming or having, or not claiming or having, a lien on the horse for the board. But Papineau, about June 15, called Wentworth's attention to the statutes relating to liens on horses and other animals, a copy of which was posted up in the stable, and on several occasions demanded money of Wentworth on account of the horse's board, and told him he should expect a settlement and payment on the first of July. The judge found that there was due Papineau from Wentworth, on June 29, 1882, a balance of $75 for proper charges for boarding the horse from March 1, 1882, to that date, which had not been paid or tendered.

On June 29, Wentworth ordered his horse and it was delivered to him in the usual manner, but he did not return it as usual, although he gave no notice whatever as to his being absent with the horse, or where he was going. After various inquiries, Papineau heard, about three weeks after the horse was taken away, that Wentworth was in Medfield; and, about August 2, he went there to reclaim the horse, and found Wentworth with the horse in Needham, and there informed Wentworth that he must settle the bill, or he should enforce a lien on the horse. Wentworth not paying the bill, Papineau took possession of the horse under a claim of a lien on it, without objection on the part of Wentworth. At the request of Wentworth, Papineau drove him to Medfield. On the way it was arranged that Papineau's agent, one Cahill, should remain and take charge of the horse, and bring the horse and Wentworth to Boston in the morning, Wentworth assenting. The horse was left at the stable where Wentworth had kept it, in charge of Cahill, and at the expense of Wentworth. In the morning Wentworth told Cahill he had concluded not to take the horse to Papineau, but was going to see him. Cahill made no attempt to take the horse against the will of Wentworth, and both came to Boston together, leaving the horse at Medfield. On that afternoon Wentworth saw Papineau and offered him $60 in full for all his claim; but Papineau refused to accept that sum in full.

Wentworth then promised to send the horse to Papineau the next day; but, instead of doing so, he removed the horse from Medfield, and concealed it. Some time after that, about August 22, Papineau found the horse in Wentworth's possession, and at once took it by force from him, against his objection. Papineau at once made the demand, and proceeded to enforce the lien, alleged in his petition.

On the day before the replevin writ was brought, Wentworth again tendered Papineau $60 in full for what he claimed he owed him; and, at the same time, the plaintiff Paine also tendered Papineau $60 in full for all claims on the horse, and demanded the same. Papineau offered to take the $60 from either on account, but refused to take $60 in full for his account and claim. Wentworth testified that he did not intend, at the time he took the horse away, on June 29, or any time after, fraudulently to deprive Papineau of his possession of the horse or of his lien on the horse, if he had one, but that he went away on that occasion to sell trees under the orders of his employers; and contended that he did not know whether Papineau had a lien or not. Papineau testified that he intended always to claim a lien on the horse.

Paine claimed the horse under a mortgage made by Wentworth on September 16, 1881, conditioned for the payment of $206 in one month, and assigned to Paine on December 9, 1881. Paine never informed Papineau that he held the mortgage until said demand; and it did not appear that Paine in any way asserted any claim to the horse while Papineau was boarding it, or while it was in Wentworth's possession, as above stated; but it did appear that Papineau knew, at the time he boarded the horse, of the making and existence of the mortgage, as he himself had held a prior mortgage on the same property, which was discharged when that mortgage was made, and Paine knew the horse was boarded there.

Upon the foregoing facts, Papineau asked the judge to rule that he was entitled to recover in the first case; and that the plaintiff in the second case was not entitled to recover. The judge refused so to rule, but found and ordered judgment for the defendant Wentworth, and for the plaintiff Paine; and Papineau alleged exceptions.

*C. G. Keyes*, for Papineau.

*C. E. Washburn*, for Wentworth and Paine.

W. ALLEN, J. In the first case, the only exception is to the refusal of the court to rule that the plaintiff was entitled to recover. If it was competent for the court to find, upon the facts stated in the exceptions, that the petitioner had waived his lien, the ruling was right.

If it can be assumed that the petitioner had a lien, which was in force when he had possession of the horse at Medfield in August, we think the court might have found a subsequent waiver and release of the lien. The petitioner had, more than a month before, ceased to keep the horse, and the possession which he then had was not that which a stable-keeper has of a horse that he boards, but was only under his lien; and the considerations urged to show that a stable-keeper does not lose his lien by allowing the owner of a horse kept by him to use the horse, and to have possession of him for that purpose, do not apply; it was a possession held merely to protect the lien, and any relinquishment of it to the owner would release the lien.

There was evidence that might have satisfied the judge who tried the case, that the respondent took possession of the horse at Medfield with the assent of Cahill, the agent of the petitioner; that it was left in his possession by Cahill; that the petitioner himself consented that it should remain in the possession of the respondent for a time, he promising to send it to the petitioner the next day; and that, when the respondent returned to Medfield from Boston, it was with the understanding of both parties that he should keep the possession of the horse until the next day.

What particular inferences of fact the judge who tried the case may have drawn from the facts and evidence stated in the exceptions we do not know. We cannot say that it appears that inferences may not have been drawn which would have made the conclusion that the petitioner had waived his lien necessary. See *Perkins* v. *Boardman*, 14 Gray, 481. *Walker* v. *Staples*, 5 Allen, 34.

This decision covers the second case.

*Exceptions overruled.*