HENRY J. VINAL *vs.* SAMUEL W. SPOFFORD.

Suffolk. Nov. 25, 1884. — March 25, 1885. C. ALLEN & COLBURN, JJ., absent.

Upon a judgment in replevin in favor of a party for part of the chattels, and against him for the residue, his appeal from the judgment against him does not reopen the judgment in his favor.

If a horse which is boarded at a livery stable is allowed by the stable keeper to be used by its owner in his business, and is sold by the owner, without the knowl-edge of the stable keeper, while the horse is away from the stable, the stable keeper loses his lien; and he cannot regain it by taking the horse from the possession of the purchaser.

REPLEVIN of one horse, one grocery wagon, one open buggy, one express harness, and one buggy harness. Writ returnable to the Municipal Court of the city of Boston. That court entered judgment for the plaintiff for all the articles replevied except the horse, with damages and costs; and also entered judgment for the defendant for a return of the horse, and for damages and costs. . The plaintiff appealed to the Superior Court from the latter judgment. Trial in that court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The defendant contended that he had a right, under the plaintiff's appeal, to try the question of the title to the wagon and the harnesses; but the judge ruled that he had no such right, and excluded evidence offered in regard to such title.

As to the horse, there was evidence tending to prove the following facts: Howard Vinal, the father of the plaintiff, during the two years prior to January 4, 1883, had owned a stock of groceries, and also the horse described in the plaintiff's declaration, which he had used in connection with his business of a grocer, at a shop in Boston, and during seven months of this period had hired the keeping of said horse at the livery stable of the defendant. On January 4, 1883, Howard Vinal, being embarrassed in his business, executed and delivered a bill of sale of all the stock, furniture, and fixtures owned by him in said shop, together with said horse, to the plaintiff, and on the same day delivered the horse to the plaintiff, in consideration of the plaintiff's promissory note, payable on demand, for a certain sum, which was received by Howard Vinal, on payment of said note, and applied by him to carry into effect a composition with most of his creditors.

At this time of this composition, Howard Vinal requested the defendant to become a party thereto, but the defendant, whose claim against Howard Vinal for keeping the horse was from $160 to $190, refused so to do unless the full amount of his claim was paid; and he did not become a party to said composition during the keeping of the horse at the defendant's livery stable, before and after the transaction of sale between Howard Vinal and the plaintiff. After January 4, 1883, the shop was conducted with the same sign upon it as before; the horse was

used in the business of said shop as before, and Howard Vinal conducted, for a salary of $12 per week, the business of the shop, with the same clerks as before, while the plaintiff carried on the business of his shoe shop on another street.

The daily custom in the matter of the use and keeping of said horse was this : it was taken by Howard Vinal, or by some person acting under his direction, from the defendant's livery stable early in the morning, and used at the shop in its business until noon, then was taken to the defendant's stable to be baited; afterwards it was taken to the shop, and there used until evening, when it was returned to the defendant's livery stable, and was there kept until the following morning. While the horse was at the shop, according to the daily custom, on January 4, 1883, he was delivered to the plaintiff, under the transaction of sale ; and, without notice thereof to the defendant of said transaction, at the close of that day was returned to the defendant's livery stable, and kept and used as previously under said custom, until replevied in this action.

The contract for the keeping of the horse between Howard Vinal and the defendant was, that for its keeping the defendant should be paid one half in cash and one half in groceries from the shop, and before the replevin the defendant, or some person by his order, had received groceries to the amount of $50 in part payment for the keeping. After January 4, 1883, and about ten days before the replevin, the defendant demanded money from Howard Vinal, or flour or sugar from the shop, in part payment of the sum due for the keeping of the horse. Howard promised to send flour for that purpose, but failed to do so, and in explanation told the defendant that the stock of his shop, horse, &c. had been sold by him to the plaintiff; and thereupon the defendant sent a person in his employ to take the horse, then at the shop in use as previously, and remove the same to his livery stable ; and the horse was then and there removed, and remained in the defendant's livery stable until replevied in this action.

The plaintiff subsequently, at said livery stable, asked the defendant to give him a statement of how much he, the plaintiff, owed for the keeping of the horse, offering to pay the same ; but the defendant refused to state any claim for the keeping of the horse against the plaintiff, declaring that the plaintiff owed

him nothing for that keeping, but that his father, Howard Vinal, owed for that keeping; and thereupon this action was brought.

The foregoing is a statement of all the facts of which there was any evidence at the trial.

The defendant requested the judge to rule, that he had the right to take and to hold the horse, by virtue of his lien as a livery stable keeper, for the keeping of the horse, and that this lien was not impaired or interrupted by allowing the owner of the horse to use the same in his business of a grocer; that the facts and circumstances in evidence of his allowing the owner of said horse the use of the same did not, in law, constitute a waiver of such lien; and that the sale of the horse by Howard Vinal to the plaintiff, without the knowledge of the defendant until after he had taken the horse to his stable, could not operate to defeat the lien which he asserted for the keeping of the horse to the time of the sale and afterwards.

The judge refused to rule as requested by the defendant, and ruled that, upon the facts and circumstances in evidence, the defendant could not maintain the lien claimed by him against the plaintiff's right to the possession of the horse under his purchase of the same from Howard Vinal, or under his retaking of the horse at said shop upon obtaining knowledge of the purchase.

The defendant contended that the sale of the horse by Howard Vinal to the plaintiff was not an actual sale, but a colorable one, and fraudulent; and that, on the morning of the day when the defendant retook the horse, the defendant had been induced to permit the horse to be taken from his possession and from his livery stable by the fraudulent promise of Howard Vinal to send to the defendant flour from his shop, in part payment for the money then due for the keeping of said horse.

The jury found specially, upon questions submitted to them, that the sale of the horse by said Howard Vinal to the plaintiff was a valid sale, made in good faith and for a valuable consideration, and that the horse was not obtained from the livery stable of the defendant by false and fraudulent representations; and returned a general verdict for the plaintiff. The defendant alleged exceptions.

*H. J. Edwards*, for the defendant.

*E. C. Gilman*, for the plaintiff.

HOLMES, J. 1. When replevin is brought for a number of chattels, some of which belong to the plaintiff and others to the defendant, although all are declared for in one count, the case is dealt with as if there were two counts, and each party was entitled to prevail upon one. *Seymour* v. *Billings*, 12 Wend. 285. *Williams* v. *Beede*, 15 N. H. 483. Each party is an actor, and each may have a judgment and legal costs, as happened in this case. *Powell* v. *Hinsdale*, 5 Mass. 343. These judgments are distinct, and it follows that an appeal by one party only from the judgment against him does not reopen the judgment in his favor. Pub. Sts. *c.* 154, §§ 39, 43; *c.* 155, § 28. Justice and analogy lead to the same result. See *Downing* v. *Coyne*, 121 Mass. 347; *Whiting* v. *Cochran*, 9 Mass. 532; *May* v. *Gates*, 137 Mass. 389; *M'Donough* v. *Dannery*, 3 Dall. 188, 198.

2. The jury have found that the plaintiff bought the horse in good faith and for a valuable consideration, and that it was not obtained from the defendant's stable by fraud. On the bill of exceptions we must assume that the previous owner of the horse rightfully took it from the defendant's custody and delivered it to the plaintiff. Such a transaction would divest a common law lien. *Perkins* v. *Boardman*, 14 Gray, 481. We are of opinion that it equally divested that which the defendant had previously acquired under the Pub. Sts. *c.* 192, § 32 (St. 1878, *c.* 208). That statute creates a lien in cases where the common law has not recognized one. *Goodrich* v. *Willard*, 7 Gray, 183. But it gives no intimation that it uses the word "lien" in any different sense from that which is known to the common law. On the contrary, it in terms supposes that the animals in question have been placed in the care, that is to say, in the possession, of the party to whom the lien is given. The provisions for sale would seem to imply the same thing. To admit that it was intended to create a tacit hypothecation, like that enforced from necessity, but within narrow limits, in the admiralty, would be to go in the face of the whole policy of our statutes, which always strive to secure public registration when possession is not given and retained, and which expressly provide for such registration when they in terms create a lien not depending on possession. It follows from what we have said, that, even if the defendant had had a lien for the keeping of the horse after

the sale, or whatever might be the rule when the animal was voluntarily restored to his possession, he lost it by allowing the plaintiff to take possession, and could not revive his right by seizing the horse. *Thompson* v. *Dolliver*, 132 Mass. 103. *Walker* v. *Staples*, 5 Allen, 34. *Papineau* v. *Wentworth*, 136 Mass. 543.

*Exceptions overruled.*