Morton, J.
This is an action of replevin involving an Autocar truck. The answer was a general denial.
The evidence tended to show that the defendant operated a public garage in Everett at which one DeLuca garaged the truck in question from the time he purchased it of the plaintiff under a conditional sales agreement on or about March 2, 1936. The storage or rental charge was $15.00 a month. Such charges were paid to the defendant up to July 1, 1936. On July 10, 1936 DeLuca was in default under the conditional contract, and on the .10th of each month thereafter, up to and including November 10, 1936. During this time he made no further payments to the defendant for rent, and in consequence thereof was in default to the defendant from and after July 1, 1936. The conditional contract contained the usual provision that title should remain in the vendor until the purchase price is fully paid. The truck was replevied on November 20, 1936. The defendant first learned of the conditional sale contract a few days prior to November 20, 1936. There was no evidence that the defendant fraudulently claimed more than he thought was due him. The evidence further tended to show, and the Court found as a fact, that it was the practice of DeLuca to use the truck in his business, thereby taking it from the garage periodically, sometimes for a period of three or four days, and returning' it when his business was completed.
The plaintiff filed numerous requests for rulings, the disposal of which by the trial Court raises the single issue as to whether or not such lien as the defendant had was lost in consequence of his permitting DeLuca to take his truck away from the garage periodically as above described.
*577 Such lien as the defendant had was created by G. L. Ch. 255, §25, prescribing that persons maintaining public garages for the storage and care of motor vehicles shall have a lien thereon for proper charges for the storage and care of the same. We think that the arrangement between DeLuca and the defendant in this case was such as to create a statutory lien in favor of the defendant.
It is elementary that a lien depends upon possession, and that loss of possession ends the lien. Although it seems unnecessary to cite any eases in support of this, we quote from the opinion in Thompson v. Dolliver, 132 Mass. 103 at page 104 as follows:
‘ ‘ That which the pledgee has. is a lien only, and to the existence of this lien possession is essential. Without possession there is no pledge, and if, having obtained this, the pledgee parts with it voluntarily, it is a relinquishment by him of his security.”
The issue in the case is, therefore, whether a garage keeper, whose business consists largely of storing and caring for motor vehicles for the night, allowing the owners, or their representatives, to use the same during the day-time, shall be deprived of his statutory lien by such arrangement. This question apparently has not been passed upon by our Supreme Judicial Court. There are statements, however, in decisions referring to the lien of a person pasturing, boarding, or keeping horses which would make it reasonable to infer that, if the Supreme Judicial Court were of the same opinion now as in those decided cases referred to, it would be held that the garage keeper did not lose his lien under the circumstances described.
In Vinal v. Spofford, 139 Mass. 126, the defendant in replevin sought to establish a lien for charges for the care of a horse incurred by a vendor of the plaintiff in replevin. It appeared that the prior owner was in the *578 habit of taking tbe horse each morning from the defendant’s stable and returning it at night. He made a valid sale of the horse to the plaintiff and thereafter took and delivered the horse to him. The Court, of course, held that the defendant could not establish his lien as against the plaintiff. It is, however, almost an irresistible inference from the language of the opinion that the Court would have upheld a lien as against the prior owner of the horse notwithstanding the daily loss of possession by the defendant. After holding that the delivery of the horse to the plaintiff would divest a common law lien, the Court goes on to say at page 130:
“We are of opinion that it equally divested that which the defendant had previously acquired under the Pub. Sts. e. 192, sec. 32.”
The statute referred to is similar to the one now under consideration.
In Papineau v. Wentworth, 136 Mass. 543, the opinion at page 546 says:
“If it can be assumed that the petitioner had a lien, which was in force when he had possession of the horse at Medfield in August, we think the court might have found a subsequent waiver and release of the hen. The petitioner had, more than a month before, ceased to keep the horse, and the possession which he then had was not that which a stable-keeper has of a horse that he boards, but was only under bis lien; and the considerations urged to show that a stable-keeper does not lose his lien by allowing the owner of a horse kept by him to use the horse, and to have possession of him for that purpose, do not apply; it was a possession held merely to protect the lien, and any relinquishment of it to the owner would release the lien. ’ ’
It is fairly obvious from the cases above cited that, under the statutes, a livery stable-keeper had a lien which *579 he did not lose every time he let the customer take a horse or wagon for use in the ordinary course of trade. It also seems obvious from the foregoing cases, especially Papineau v. Wentworth, that the possession of the livery stable-keeper in such cases was held to be different than a “possession held merely to protect the lien.” A possession such as is last referred to, if lost, results in release or loss of the lien, whereas the daily use of the chattel, as above described, would not result in such loss.
The same situation arose in Perkins v. Boardman, 14 Gray 481. In that case the owner of a mare boarded it with the defendant from week to week and month to month, and when the first month’s board was due the owner said he couldn’t pay and told the livery stable-keeper “to hold on to her and when she eats herself up, you can keep her, sell her or do as you please with her.” It would appear that thereafter the possession of the livery stable-keeper is similar to that referred to in Papineau v. Wentworth as “a possession held merely to protect the lien.” Some time thereafter the owner of the mare mortgaged it to the plaintiff and was permitted to use the mare daily in his business. It was held that the defendant lost his hen by allowing the owner possession of the mare. It was held in that case at page 483:
“A lien may perhaps be renewed by the return and restitution of the property; but in such case it will be subordinate to any intervening incumbrance to which the property in the mean time has become subject.”
We think, therefore, that, under the peculiar circumstances of that case, the language of the opinion is not applicable to the situation in the case at bar where the defendant did not have possession of the truck merely to preserve a lien, but allowed the owner to take the same from day to day in the ordinary course of business.
*580 From the cases above cited it would appear that a garage keeper, like a livery stable-keeper, would not lose his statutory lien by allowing the use of the property from time to time by the owner.
We, therefore, are of the opinion that the lien of the defendant was continuous and not interrupted by the periodic delivery of the truck to the conditional vendee; that delivery of the truck was made to the defendant before he had actual notice of the conditional sale, and, at the time of the delivery, that the vendee was not in default thereunder. Under these circumstances the provisions of section 35 in said Chapter 255 of the General Laws are applicable.
We see no error in the disposition of the requests for rulings, and an entry will be made dismissing the report.