*Municipal Court of the City of Boston*

No. 429167

## NORTH END AUTO PARK, INC.
### v.
## PETRINGA TRUCKING CO., ET AL

(June 21 — December 10, 1957)

*Present:* GILLEN, J. (PRESIDING), LEWITON AND SPIEGEL, JJ.

Case tried to ADLOW, C. J., in the Municipal Court of the City of Boston.

(This opinion has been abridged.)

*Lewiton, J.* This case involves a petition by the operator of a public garage seeking establishment of a lien under G. L. c. 255, §§25 and 26, for charges for the storage and care of certain motor vehicles owned by two of the respondents, and for gasoline, oil and repairs furnished for such vehicles by the petitioner. The Shawmut National Bank of Boston, a mortgagee of some of the vehicles, was joined as a respondent. After the filing of the petition, the respondent-owners were adjudicated bankrupts, and their trustees in bankruptcy were substituted for them as parties respondent. The matter was submitted to the trial judge on an agreed statement of facts, the material portions of which may be summarized as follows:

The motor vehicles in question were stored by their owners at the petitioner's garage from August 1, 1955 to August 2, 1956, and were there furnished with gasoline, oil, repairs and storage for which there was an unpaid balance due to the petitioner. At no time were any of the vehicles pledged to the petitioner as security for such charges. The owners or their agents and servants, used all of said vehicles in the trucking business of the owners from time to time, taking them daily away from the premises of the petitioner, with its knowledge and consent, for such use from August 1, 1955 to April 30, 1956. On April 30, 1956 and thereafter, the petitioner refused to allow the owners to remove any of their vehicles from its custody. On April 30, 1956, the unpaid balances due the petitioner in connection with said vehicles amounted to $3,425.21 for gasoline and oil; $464.47 for repairs; and $2,250 for storage for nine months, from August 1, 1955 to April 30, 1956. The vehicles continued in the uninterrupted possession of the petitioner under the claim of lien from April 30, 1956 until August 2, 1956 when

they were sold and the proceeds of the sale placed in escrow as a substitute for the vehicles, pending judicial determination of the rights of the petitioner in said property under its claim of lien.

At the close of the evidence each of the parties filed numerous requests for rulings. After acting on said requests the court made the following findings of fact:

"I find that up to April 30, 1956, the plaintiff did not retain uninterrupted possession of the trucks upon which it claimed a lien, and by this action in permitting the defendant's trucks to leave its possession, it lost its rights as a lien-holder. I find that it did retain possession from April 30, 1956, to August 2, 1956. It did assert its lien and is entitled to have its lien established in the amount of $750.00."

The court established a lien in the sum of $750.00 for May, June and July, 1956.

The petitioner claiming to be aggrieved by the court's action in denying certain of its requests for rulings and in granting certain of the rulings requested by the defendant, claimed a report.

Essentially, the issues for determination are whether the trial court was correct in ruling (1) that such lien as the plaintiff may have had for storage, gasoline, oil and repairs furnished prior to April 30, 1956 was waived or lost by the petitioner's practice of knowingly permitting the owners of the motor vehicles to take them from the petitioner's garage from day to day for use in the owners' business, and (2) that such lien, so waived and relinquished by the petitioner, was not restored or revived by the petitioner's subsequent regaining of possession of the motor vehicles.

The rulings complained of were correct. The petitioner properly makes no claim of a common law lien on the motor vehicles in question. *Fleisher v. Handler*, 303 Mass. 482, 484; *Vinal v. Spofford,*

139 Mass. 126, 130; *Graben Motor Co. v. Brown Garage Company*, 197 Iowa 453. It bases its claim on the provisions of G. L. c. 255, §25, which provides that: "Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof shall have a lien upon such motor vehicles for proper charges due them for the storage and care of the same." Whether the foregoing statutory language is broad enough to encompass charges for gasoline and oil furnished for the operation of motor vehicles need not now be determined in view of our conclusion that any lien for charges prior to April 30, 1956 was waived or lost by the petitioner, and the fact that no gasoline or oil was supplied for the vehicles after that date.

The petitioner recognizes the well-established principle that in general, apart from special statutory provisions, if a person claiming a lien on a chattel voluntarily surrenders its possession to its owner, the lien is thereby waived or extinguished. *Walker v. Staples*, 5 Allen 34, 35; *Perkins v. Boardman*, 14 Gray 481, 483; *Moors v. Reading*, 167 Mass. 322; *Alexander v. Mobile Auto Co.*, 200 Ala. 586, 587-8; *Morfa v. Rhodes*, 213 Ill. App. 354; *Reich v. Triplett*, 199 N.C. 678, 681; *Clarksburg Casket Co. v. Valleu Undertaking Co.*, 81 W.Va. 212, 3 ALR 660. It is urged, however, that since G. L. c. 255, §25 was specifically intended to create a remedy for garage owners which they did not have under the common law, and since it is the common practice for garage owners to permit owners of motor vehicles kept there to take them out daily for use in the business of their owners, the statute, should be so construed as to preserve the lien despite such permitted daily use. Otherwise, it is argued, the statute would be of no assistance to the garage owner in the great bulk of the situations to which it would at first glance seem applicable.

While such a construction would doubtless give broader coverage to garage owners, we cannot agree that the narrower construction requiring continuity of possession for preservation of the lien would render the statutory remedy nugatory, or would defeat the intent of the legislature in enacting it. For one thing, it is common knowledge that there are innumerable instances in the current operation of public garages in which motor vehicles are stored for limited periods of time without interruption of storage, the charges for which are adequately secured by the statutory lien. Moreover, it could well have been within the knowledge of the legislators who enacted the present G. L. c. 255, §25 in 1913, that many owners of motor vehicles of that era customarily put such vehicles into "dead storage" for a continuous period of several months during each year. As applied to such a situation, there was ample scope for operation of the statutory remedy for the benefit of the garage owner.

Even if this were a completely novel question, we should be reluctant to construe the lien statute in a manner which would go beyond its plain language, particularly in view of the principle that "statute liens, which give a priority of payment to one class of creditors over another are *stricti juris*, and are not to be extended beyond the clearly expressed intent of the legislature." *Rogers v. Currier*, 13 Gray 129, 134. Whether the scope of the statute should be enlarged is a matter for the legislature. *Mills v. Shirley*, 110 Mass. 158, 159; *C.I.T. Corp. v. Biltmore Garage*, 3 Cal. App. (2d), 757; Cf. *Morfa v. Rhodes*, 213 Ill. App. 354; *Wolman v. Raphael*, 278 Ill. App. 172, 174-5.

The construction of the statute adopted by the trial judge is required by the principles set forth and applied in *Vinal v. Spofford*, 139 Mass. 126. That case, decided in 1885, involved the claim of a lien by a livery stable owner under a statute (Pub. St. c.

192, §32, now G. L. (Ter. Ed.) c. 255, §24), substantially identical with that now under consideration. It had been the practice of the owner of the horse to take it from the stable each day, use it in his business, and return it to the stable each night, all with the consent of the stable-owner. In affirming the trial court's denial of a requested ruling that the surrender of possession of the horse to its owner by the livery stable owner each day did not impair the lien which the latter had previously acquired under the statute for charges for the boarding of the horse, *Holmes, J.* said, at page 130: "That statute creates a lien in cases where the common law has not recognized one . . . But it gives no indication that it uses the word 'lien' in any different sense from that which is known to the common law." The stable owner had lost his lien by allowing the owner of the horse to take possession of it.

Here, the trial judge ruled correctly that the petitioner was not entitled to have its lien established with respect to any charges incurred prior to April 30, 1956, the date from which it retained continuous possession of the motor vehicles in question.

The question remains whether the lost lien was revived by reason of the fact that the owners of such vehicles thereafter redelivered them to the petitioner's garage. The record is bare of any suggestion that the redelivery of the vehicles was for the purpose of reviving the lien or was pursuant to any agreement to that effect. The case of *Vinal v. Spofford*, 139 Mass. 126 left open the question whether a lien which had been destroyed by surrender of possession of the chattel to the owner might be revived if the chattel were voluntarily restored to the possession of the lien claimant. *Perkins v. Boardman*, 14 Gray 481, 483. However, we think the simple return of the vehicles to the garage of the petitioner, did not revive such lien, particularly

where, as in this case, the rights of other creditors of the owners would be adversely affected by such revival of lien. *C.I.T. Corp. v. Biltmore Garage,* 3 Cal. App. (2d) 757; *Alexander v. Mobile Auto Co.,* 200 Ala. 586, 588; *Andalusia Motor Co. v. Mullins,* 28 Ala. App. 201, 204, 206, Cert. den. 236 Ala. 474; See *Blashfield, Cyc. of Auto Law (Perm. Ed.)* §5124; *Jones, Liens* (3rd Ed. 1914) §§747, 1000; Cf. *Rogers v. Currier,* 13 Gray 129, 134; *Perkins v. Boardman,* 14 Gray 481, 483; *Thompson v. Dolliver,* 132 Mass. 103; Cf., also, *Gordon v. Sullivan,* 188 F. 2d 980, 982 App.D.C., (where the opinion states that under the statute there involved, lien was in state of suspended animation while the vehicle was in possession of owner, and was restored to full vitality when lien claimant regained possession of vehicle.)

The trial court properly ruled that the lien available to the petitioner covered only the period after April 30, 1956, when it retained continuous possession of the vehicles.

The Report does not raise any question of any alleged excessive claim of lien by the petitioner while the vehicles were withheld from the owners after April 30, 1956. In any event, there is nothing in the Report to indicate that the owners of the vehicles ever tendered any amount to the petitioner after April 30, 1956 to discharge such lien as the petitioner may then have had. Cf. *Doody v. Collins,* 223 Mass. 332.

*Report dismissed.*

Samuel A. Valenti and Joseph G. Kelly, both of Boston for the Petitioner. Cited *Guaranty Sec. Corp. v. Brophy,* 243 Mass. 597 as authority that the lien was valid as against the mortgagee.

W. L. White of Boston for the Respondent.

Paul V. Power of Boston for Mortgagee.