NORTH END AUTO PARK, INC. *vs.* PETRINGA TRUCKING
Co., INC. & another.

Suffolk.    April 9, 1958. — June 3, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Lien,* Garage keeper's lien, Lien for repairs.   *Practice, Civil,* Case stated.

The fact that, with the knowledge and consent of a garage keeper, motor
    vehicles stored in his garage and repaired by him were daily taken
    from the garage, used, and then returned to the garage by their owner
    did not defeat the garage keeper's lien on them under G. L. c. 255, § 25,
    for his storage charges or his common law lien for his repairing charges
    where no third person acquired any rights in the vehicles while they
    were out of the garage.  [622–623, 624]
G. L. c. 255, § 25, giving a garage keeper in whose garage motor vehicles
    are stored a lien on the vehicles for their "storage and care" does not
    give him a lien on them for charges for gasoline and oil supplied to them
    by him during the storage.  [623]
A garage keeper who repaired motor vehicles stored in his garage had a
    common law lien on the vehicles for his labor and materials in making
    the repairs.  [623]
Upon submission of a proceeding to enforce a garage keeper's lien on a case
    stated, the fact that the petitioner claimed in his petition only a lien
    under G. L. c. 255, § 25, did not preclude him from establishing also a
    common law lien to which he was entitled on the facts.  [623–624]

PETITION, filed in the Municipal Court of the City of
Boston on May 18, 1956.

The case was heard by *Adlow,* C.J.

*Joseph G. Kelly,* for the petitioner.

*William L. Smith,* for the trustees in bankruptcy.

SPALDING, J.   This is a petition to enforce a garage
keeper's lien under G. L. c. 255, §§ 25 and 26.   The case
was submitted on a statement of agreed facts, amounting
to a case stated.

The petitioner operates a public garage in Boston.   During
the period from August 1, 1955, to August 2, 1956, the re-
spondents Mary Petringa and Petringa Trucking Co., Inc.,
were the owners of all of the motor vehicles (consisting of

trucks, trailers and tractors) on which a lien is claimed. In this period the petitioner stored the vehicles, supplied them with gasoline and oil, and repaired them. During part of this period (from August 1, 1955, to April 30, 1956) the respondents used all of the vehicles in their trucking business, taking them away each day from the petitioner's garage with its knowledge and consent. On April 30, 1956, the petitioner refused to allow the respondents to remove the vehicles, and from that date to August 2, 1956, they remained in the uninterrupted possession of the petitioner under a claim of lien. On the latter date the vehicles were sold and the proceeds, under a stipulation executed by all of the interested parties, were placed in escrow, "pending judicial determination of the rights of the petitioner in . . . [the fund] under the claim of lien."

As of April 30, 1956, the unpaid balance due the petitioner in connection with the vehicles was as follows: for gasoline and oil $3,425.21; for repairs $464.47; for storage $2,250. These charges, amounting to $6,139.68 in the aggregate, were incurred during the period from August 1, 1955, to April 30, 1956.

After the commencement of the present proceedings both respondents were adjudicated bankrupts, and their trustees in bankruptcy were substituted as parties.

The trial judge ruled that for the period up to April 30, 1956, the petitioner had no lien because it did not retain uninterrupted possession of the trucks. He further ruled that by reason of the petitioner's uninterrupted possession of the trucks for the period between April 30, 1956, and August 2, 1956, the petitioner was entitled to have its lien established in the amount of $750, the storage charges for three months. A report to the Appellate Division was dismissed and the petitioner appealed.

The petitioner is asserting a lien for storage, gasoline, oil, and repairs. The questions for decision are whether, for the period during which the vehicles were taken daily from the garage, any lien exists, and, if so, to which of the foregoing items it extends.

1.   Section 25 of c. 255 provides: "Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof shall have a lien upon such motor vehicles for proper charges due them for the storage and care of the same."  At common law the garage keeper had no lien for storage and it is only by § 25 that he acquired/one.  *Flesher* v. *Handler*, 303 Mass. 482, 484.  In this respect he was in the same situation as the agistor or keeper of animals who likewise had no lien at common law but was given one by statute.  St. 1878, c. 208, now G. L. c. 255, § 24.  The agistor's lien was construed by this court in *Vinal* v. *Spofford*, 139 Mass. 126, and since this decision is heavily relied on by the respondents and was to a considerable extent the basis for the opinion of the Appellate Division, it merits discussion.  In that case the owner of a horse boarded it at the defendant's livery stable and had become indebted to the defendant for the horse's board. The defendant, nevertheless, permitted the owner to take and use the horse every day.  While this arrangement was in force, the owner, while in possession of the horse, sold it to the plaintiff, a bona fide purchaser.  The plaintiff continued to board the horse at the defendant's stable (the defendant having no knowledge of the sale), taking it out each day and returning it each night.  On the failure of the former owner to pay the indebtedness for the board of the horse the defendant seized the horse while it was in the plaintiff's possession away from the stable.  The plaintiff brought replevin to recover the horse.  It was held that the defendant's lien was lost.  It was said per Holmes, J., "Such a transaction would divest a common law lien. . . . [The statute] gives no intimation that it uses the word 'lien' in any different sense from that which is known to the common law.  On the contrary, it in terms supposes that the animals in question have been placed in the care, that is to say, in the possession, of the party to whom the lien is given. . . . To admit that it was intended to create a tacit hypothecation, like that enforced from necessity, but within narrow

limits, in the admiralty, would be to go in the face of the whole policy of our statutes, which always strive to secure public registration when possession is not given and retained, and which expressly provide for such registration when they in terms create a lien not depending on possession" (p. 130). What was said in *Vinal* v. *Spofford* concerning the lien there involved is equally applicable here. In other words the lien of the garage keeper like that of the keeper of animals essentially is a possessory lien and is divested by a complete and voluntary loss of possession. Restatement: Security, § 80.

It might appear at first blush that the principles discussed in *Vinal* v. *Spofford* militate against the existence of a lien in the case at bar for the period when the trucks were daily taken out of the garage. But as Mr. Justice Lummus said in § 85 of his treatise, The Law of Liens, "The common-law rule requiring continued possession in order to keep alive a lien must, in reason, be subject to some modification in the case of livery-stable keepers, just as it is in the case of innkeepers. While a complete voluntary loss of possession would doubtless defeat the lien . . . merely allowing the owner to take the animal for use during the day, with the expectation on the part of both parties that he was to be brought back to the stable when the temporary use has ended, according to the almost universal custom, must be held not to defeat the lien, at least as against the owner or persons having notice, or the statute giving the lien is of little value." This reasoning is equally applicable to the garage keeper's lien. While the precise question has never been decided by this court there are intimations which tend in the direction of the principle just stated. Thus in *Perkins* v. *Boardman*, 14 Gray, 481, 483, it was said, "A lien may perhaps be renewed by the return and restitution of the property; but in such case it will be subordinate to any intervening incumbrance to which the property in the mean time has become subject." And concerning the closely analogous situation of a pledge it was said in *Walker* v. *Staples*, 5 Allen, 34, 35, that "the doctrine that possession

North End Auto Park, Inc. *v.* Petringa Trucking Co. Inc.

must be retained is held with reasonable qualifications." There is nothing to the contrary in *Vinal* v. *Spofford*. All that was actually decided in that case was that the lien was divested by the sale of the horse to a bona fide purchaser while it was out of the stable keeper's possession, and he did not regain the lien by seizing the horse while it was in the possession of the purchaser. The question whether the lien might have revived if the horse had been voluntarily restored to the possession of the stable keeper was expressly left open.

The question whether a garage keeper's lien or one of like nature is revived by a return of the property to the possession of the lienor after a temporary interruption of possession has been considered by courts elsewhere and the prevailing view is that the lien revives. *Young* v. *Kimball*, 23 Pa. 193 (relinquishment of horses by stable keeper for temporary use held not inconsistent with lien). *Smith* v. *Marden*, 60 N. H. 509, 512 (per Doe, C.J., "The daily right of the owner to take the cow from the pasture, for a usual and proper purpose, is as consistent with . . . [the pasturing lien], as the daily right of a boarder to carry various articles of his baggage from his boarding-house"). *Commercial Acceptance Corp.* v. *Hislop Garage Co.* 89 N. H. 45 (garage keeper's lien for repairs not lost by temporary surrender of vehicle). *Johanns* v. *Ficke*, 224 N. Y. 513 (statutory lien of stable keeper not lost by daily use of horse by owner under agreement to return horse to stable each night). *Pacific States Fin. Corp.* v. *Freitas*, 113 Cal. App. 757 (taking automobile from garage each day and returning it at night held not to destroy lien). (Compare *C. I. T. Corp.* v. *Biltmore Garage*, 3 Cal. App. 2d 757.) *In re Carter*, 21 F. 2d 587 (D. C. W. D. N. Y.) (garage keeper's lien not lost by surrender to owner for temporary use under agreement to return). Restatement: Security, § 80 and comment c.

We are of opinion that both on principle and authority the petitioner's lien here was not defeated by the owner taking the trucks out daily and returning them to the garage each night. A contrary conclusion would render the lien of little value; it would be limited to charges accruing after

the last return of the vehicle. Except for vehicles in "dead storage" such charges would be comparatively small. We think that the Legislature in enacting § 25 intended to give the garage keeper a more substantial right.

Of course, the rule just stated is subject to the qualification that if a bona fide purchaser acquires rights in the vehicle while it is temporarily out of the garage his rights will prevail over those of the garage keeper. *Vinal* v. *Spofford,* 139 Mass. 126. And doubtless an attaching or levying creditor who has no knowledge of the lienor's interest would have rights superior to the lienor if he acquired them while the vehicle was out of the lienor's possession. Restatement: Security, § 80.

2. The lien under § 25 is for "storage and care." We must now determine what items, beyond that of storage, are covered by these words. We are of opinion that they do not cover the items for gasoline and oil. A more difficult question is whether "care" is limited to that care which is incident to the storing of automobiles, or whether it is used in a more general sense to include repairs made to an automobile. This question, however, we need not decide, because we think that the petitioner can secure its charges for repairs with a common law lien. At common law a mechanic or artisan who, with the consent of the owner, does work upon or adds materials to a chattel has a lien. Lummus, The Law of Liens, § 36. Restatement: Security, § 61 *Townsend* v. *Newell,* 14 Pick. 332. We are of opinion that such a lien extends to the labor and materials expended by a garage keeper in repairing an automobile. A garage keeper's lien for repairs to an automobile was recognized in *Dunbar-Laporte Motor Co.* v. *Desrocher,* 247 Mass. 292.[1] That case, however, sheds no light on whether the lien was based on the common law or arose from the statute.

The petitioner has not claimed a common law lien; it has sought a lien only under the statute. The failure to plead a common law lien, however, is of no consequence. Where,

---

[1] See *Cuneo* v. *Smith,* 251 Mass. 399, where, although no lien for repairs was given to the garage keeper on the facts, the decision assumed that he might have had one in different circumstances.

as here, a case is submitted on a statement of agreed facts all questions of pleading are waived and the only question is whether the plaintiffs "can recover upon any form of declaration or in any form of action." *West Roxbury* v. *Minot*, 114 Mass. 546, 547. *Bartlett* v. *Tufts*, 241 Mass. 96. *Union Old Lowell Natl. Bank* v. *Paine*, 318 Mass. 313, 317. We think that the interrupted possession here involved no more defeated the common law lien for repairs than it defeated the statutory lien for storage.

3. One final matter remains. At the arguments before us counsel for the trustees in bankruptcy suggested that even if the petitioner was entitled to a lien for the period during which the trucks were taken daily from the garage, this lien would not be good as against the trustees by reason of § 67 (c) (2) (11 U. S. C. [1952] § 107) of the bankruptcy act. It is a sufficient answer to this argument to say that this point has not been briefed either by the trustees or by the petitioner and was injected into the case for the first time at the arguments. The case appears to have been tried in both courts below without any reference whatsoever to the bankruptcy act on the rights of the parties. If such a question is to be decided by this court we should have the benefit of the assistance of counsel, and the petitioner is entitled to know in advance what it must meet so that it may argue the point either in its brief or a reply brief. We consider the case, therefore, on the footing on which the case has been presented below and in this court. We might add that, having in mind the transitory interruption of possession, we should be reluctant to hold, as the trustees would have us, that the petitioner's lien was defeated because "not accompanied by possession" within the purview of § 67 (c) (2).

It follows that the petitioner is entitled to recover for repairs in the amount of $464.47, and storage in the amount of $3,000, or $3,464.47 in the aggregate. Accordingly the order of the Appellate Division is reversed and judgment is to be entered for the petitioner in the sum of $3,464.47.

*So ordered.*