**UNION COMMERCIAL CORP. v
R. J. SCHMUNK CO.**

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 17103.  Decided June 26, 1939

Leo Rossman, Esq., Cleveland, for plaintiff-appellant.

Krueger, Gorman & Davis, Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

The plaintiff, a New York corporation, brought this action in replevin in the Municipal Court of Cleveland, to recover from the defendant, an Ohio corporation, possession of a Pontiac sedan. Judgment was rendered for the defendant and the following is a synopsis of the findings of facts by the Court.

On or about August 26, 1936, one Lee Welikson purchased a Pontiac Sedan from E. H. Goodman Motor Car Company, Inc., a New York automobile dealer. As part of the purchase price Welikson gave the Goodman Company his note for $793.92, payable in monthly installments and received a conditional sales contract which was duly filed for record on September 1, 1936, with the Registrar of Motor Vehicles of Kings County, New York, where Welikson resided. Plaintiff, on August 31, 1936, purchased the Good-man Company's interest in the note and contract.

Some time in 1937, Welikson came into Ohio as a salesman and without securing the plaintiff's consent, brought with him the Pontiac sedan. On December 2, 1937, he executed and filed with the Clerk of Courts of Richland County, Ohio, a sworn statement of ownership for the Pontiac in which the Conditional Sales Contract was not mentioned and gave Mansfield as his address. Welikson then secured an Ohio license for the Pontiac automobile.

In January, 1938, Welikson purchased a new Terraplane from the defendant company, which agreed to allow $510.00 as a trade-in value for the Pontiac. Welikson, on January 27, 1938, signed and filed with the Clerk of Courts of Cuyahoga County an application for a certificate of title for the Pontiac automobile without mentioning any existing lien of any kind or description although $266.40 was still unpaid on the conditional sales contract owned by the plaintiff. He gave his address as Cleveland, Ohio. The Clerk of Courts of this County then issued a certificate of title for the Pontiac showing title in Welikson free of all encumbrances.

On the same day, Welikson assigned this certificate of title to the defendant which then had a new certificate of title issued to it. The purchase agreement was consummated and the Pontiac was delivered to the defendant.

On February 2, 1938, the plaintiff learned through Welikson that the Pontiac automobile had been sold to the defendant and the plaintiff then brought this replevin action.

All transactions herein referred to were carried out in the regular course of business and both the plaintiff and the defendant acted in good faith.

The Certificate of Title Law relating to automobiles (§6290-2 to 6290-20, inclusive, GC) became effective on January 1, 1938. Prior to January 1, 1938, the purchase and sale of motor vehicles was controlled by §§6310-3 to 6310-14 inclusive, GC, which

were repealed in the enactment of the certificate of title law. Prior to January 1, 1938, the law required that the sale and transfer of motor vehicles should be by the execution of a bill of sale in duplicate which would be filed within three days, of the sale with the Clerk of Courts of the County in which the same was consummated. The filing of a chattel mortgage, conditional sales contract, and other similar instruments was governed by the provisions of §§8560 and 8572 inclusive, GC.

Under the certificate of title law the title of the purchaser of an automobile is evidenced not by a bill of sale from the vendor but by a certificate of title issued by the Clerk of Courts of the County in which the sale was made. Likewise, a chattel mortgage or a conditional sales contract is not recorded as under the old law, but is noted on the certificate of title. It is evident that the certificate of title law represents a radical change in the law as to the sale and transfer of motor vehicles and the registering of liens against them.

A case very similar to the instant case, arising under the law as it existed prior to January 1, 1938, was decided in the case of **Reising v Universal Credit Company, 50 Oh Ap 289,** in which the court said:

"A conditional sales contract executed between residents of another State in conformity with the laws thereof but which does not in all its terms comply with the laws of Ohio, concerning property located in such other State, and afterwards moved to Ohio, without the consent or knowledge of the seller or his assignee, will be enforced in Ohio."

This case refers to, and follows the case of **Kanaga v Taylor, 7 Oh St 134,** wherein the Supreme Court of Ohio permitted the mortgagee of a chattel mortgage, executed and registered in New York to recover the value of the property from a bona fide purchaser of the chattel in Ohio, having no notice of the chattel mortgage.

If this case had arisen under the old Bill of Sale Act the claim of the plaintiff probably would be superior to that of the defendant, and it would be permitted to recover in this action.

Further inquiry must then be directed to determine whether or not a different result is required by the Certificate of Title Law, §§6290-2 to 6290-20 inclusive, GC.

In the case of **State ex rel City Loan & Savings Co. v Taggart, 134 Oh St 374,** the Act was declared constitutional.

Sec. 6290-2, GC deals with the sale of new motor vehicles and therefore has no application to the present case.

Sec. 6290-3, GC requires that every person selling a motor vehicle shall deliver to the purchaser a certificate of title and also requires that every purchaser of a motor vehicle shall obtain a certificate of title in accordance with the provisions of this Act.

The most important section of the Act as bearing on the present case is §6290-4, GC. For the sake of convenience we quote the above section in two separate paragraphs, although in the statute the section is one solid paragraph:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer-dealer or otherwise, hereafter shall acquire any right, title, claim or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuation consideration."

"No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or import-

er's certificate duly issued in accordance with the provisions of this Chapter."

Before January 1, 1938, §6310-3 to 6310-14, incl., GC, declared it to be unlawful to sell a motor vehicle without executing a bill of sale therefor. The Supreme Court, however, in the case of **Commercial Credit Company v Schreyer, 120 Oh St 568,** held in the third paragraph of the syllabus:

"3. Any assignment or transfer of a motor vehicle (not violative of the Uniform Sales Laws of this State) which is not executed and delivered in compliance with §§6310-3 to 6310-14, GC, but which is accompanied by delivery of possession, is, nevertheless, a valid contract between the parties thereto."

Accordingly, the court held a chattel mortgage upon a motor vehicle in the possession of the mortgagor at the time of the execution of the mortgage to be a valid mortgage between the parties although no bill of sale therefor had been executed in compliance with §§6310-4 to 6310-14, GC, and further held that such a chattel mortgage had priority over subsequent purchasers and mortgagees in good faith.

It is clear that the first paragraph of §6290-4, GC, operates as a repeal of the doctrine of Credit Company v Schreyer, supra, so that where there are two claimants to a motor vehicle the one who has the certificate of title issued by the Clerk of Courts of the proper county will be protected against a rival claimant.

The extent to which the courts in those states having a certificate of title law similar to the one now in effect in Ohio, have gone in requiring a certificate of title as proof of ownership, is found in the case of Hoshaw v Fenton, 110 Southwestern Reports (2nd Series) 1140, where a Missouri court, interpreting a similar statute in Missouri refused to give effect to an assignment of an automobile in payment for services rendered and in a replevin suit brought by the executor of the deceased assignor, awarded the automobile to the plaintiff, for the reason that the "statute regarding the transfer of title to automobiles must be strictly adhered to", and "the sale of an automobile without an assignment or transfer of the certificate of title delivered at the time of delivery of the automobile, as provided by statute, is fraudulent and void."

It is to be noted that in this Missouri case no rights of innocent third parties intervened as in the case we are now considering.

The important part of §6290-4, GC, in its bearing on the instant case is the concluding sentence:

"No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the provisions of this chapter."

The language of this section is clear and unequivocal. It provides that no court in Ohio shall recognize the "right, title, claim or interest" of any person in any motor vehicle sold or disposed of after January 1, 1938, unless evidenced by a certificate of title or in the case of a new car by a manufacturer's or importer's certificate. To this requirement there is one exception which is found in the concluding paragraph of §6290-9, GC, which is as follows:

"The provisions of §§8560 to 8572 incl. GC, shall continue to apply to the deposit, filing, re-filing or other record whatsoever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument, or any copy of same, made prior to the effective date of this act and covering a motor vehicle."

Plaintiff's conditional sales contract was not filed under §§8560 to 8572, GC, in Ohio, and therefore ▮▮▮▮▮ cannot possibly come within this provision. It therefore becomes unnecessary to consider what the rights of the plaintiff would have been if he had in this case a conditional sales contract properly recorded in Ohio.

As times goes on, considering the average life of an automobile, the number of automobiles in this state having mortgage liens made and filed prior "to the effective date of this act" that is prior to January 1, 1938, will become less and less. In a comparatively short time such automobiles will practically disappear so that the above provision enacted to protect liens recorded prior to January 1, 1938 will become inoperative.

It should be noted, however, that if the title of the New York owner is to be recognized and enforced in this case we would be writing into the Ohio statute an exception which will continue so long as the law of New York as to conditional sales contracts remains unchanged.

In this case, the plaintiff having no certificate of title and having no lien or conditional sales contract recorded in Ohio prior to January 1, 1938, is seeking to have this court "recognize" his "right" and his "interest" in this automobile in the face of the plain provision of §6290-4, GC, that this court shall not recognize the plaintiff's "right" or "interest" in any automobile sold and disposed of after January 1, 1938, "unless evidenced by a certificate of title."

Inasmuch as there was no notation of the plaintiff's conditional sales contract on the certificate of title it is clear that the "interest" of the plaintiff in this automobile was not evidenced by a certificate of title as required by the statute. The command of the statute is that on such a state of the facts the right or interest of the plaintiff shall not be recognized by this court.

Inasmuch as certificate of title laws applying to motor vehicles are some-

what recent, they have not been frequently before the courts. However, in Maryland Credit Finance Corporation v Franklin Credit Finance Corporation, 164 Va. 579, the question was squarely presented and decided. Virginia has a certificate of title law very similar to the one in Ohio.

The facts in this case were that on October 18, 1933, one Webb purchased a motor truck which was to be financed by the appellant, and on the same day application was made to the proper state authority for a certificate of title, and the application set forth the indebtedness of the purchaser to the appellant. A certificate of title was issued, but it failed to show the lien in appellant's favor. It was recalled and on November 9, 1933, a certificate of title was issued showing the lien. In the meantime, on October 25, 1933, the appellee recovered a judgment against Webb, the purchaser of the truck. Execution was issued on the same day and the sheriff levied on the truck.

Section 2154(64) of the Code of Virginia provides that all liens should be shown on the face of the certificate of title just as is the case in Ohio. The question before the Court was whether the lien of the appellant finance company or the judgment and the levy of execution of the appellee was to be preferred. The Court held:

"When a certificate of title to a motor vehicle is issued which fails to show a lien or uncumbrance it is notice to the world that the property is free from any lien or encumbrance and if transferred to a bona fide purchaser the latter would obtain a good title."

The Court also held, that:

"The execution creditor stood in the same situation as a bona fide purchaser without notice"

and his lien was therefore to be preferred to that of the appellant.

The court said, on pages 582 and 583:

· "The statute, in our opinion, is plain and unambiguous. The key sentence in the section is this:

'Said certificate of title when issued by the division showing a lien or encumbrance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers.' It follows therefore, that when a certificate of title is issued which fails to show a lien or encumbrance, it is notice to the world that the property is free from any lien or encumbrance, and if transferred to a bona fide purchaser the latter would obtain a good title. There being no lien of record as required by statute, an execution creditor stands in the same situation as a bona fide purchaser without notice."

"It was the intention of the legislature to provide for a simple means for the ascertainment of liens against motor vehicles. Instead of requiring a creditor or purchaser to look for liens against motor vehicles in many places, perhaps, the fact that such liens exist can be established by looking in the one place designated by the statute."

In the above Virgina case, all of the parties were residents of the State of Virginia. In the instant case the plaintiff is a resident of New York where the first sale and purchase of the case was executed. Therefore, one question remains to be answered. Does the principle of comity require that this court give effect to the prior conditional sales contract registered in New York?

Ordinarily the courts of one state will recognize and enforce rights which have been created in another state on the principle of comity between states. However, such action on the part of the court of the forum is granted as a courtesy and cannot be claimed as a right.

5 Ruling Case Law, page 910:

"In considering the question of comity it should always be borne in mind that the recognition of foreign laws cannot be claimed as a right but only as a favor or courtesy. * * * Comity being voluntary and not obligatory, rests in the discretion of the tribunals of the forum governed by the more or less widely recognized rules. * * *"

There are well recognized limitations on the application of the principle of comity.

5 Ruling Case Law 911, Section 5:

"In the recognition and enforcement of foreign laws the courts are slow to overrule the positive law of the forum; and they will never give effect to a foreign law when to do so would prejudice the state's own rights or the rights of its citizens or when the enforcement of the foreign law would contravene the positive policy of the law of the forum, whether that policy be refuted in statutory enactment or not."

It is our opinion that the enforcement in this action of plaintiff's conditional sales contract in New York would contravene the policy of the certificate of title law in Ohio. The policy of this law in this state is to provide one place of search and one document on which all liens and conditional sales contracts affecting the title to automobiles are to be found. Every bona fide purchaser has the right to rely on this document and to act on the basis that if no liens are shown on the certificate of title none exist.

Although we do not find that the exact question in this case has ever arisen, we find in the authorities abundant recognition of this principle in its application to conditional sales contracts.

In **Boyer et v M. D. Knowlton Company, 85 Oh St 104,** it was held:

"Written contracts of conditional sale of personal property, situate in Ohio, although made in another state, must be made and verified as provided in Section 4155-2, Revised Statutes, in order to preserve the title in the vendor, as against subsequent purchasers and mortgagees in good faith and creditors even if such contracts are in accord-

ance with the law of the state where entered into. The rule of comity between states does not supersede compliance with said section."

In some states conditional sales contracts are held to be contrary to public policy on the ground that a vendor will not be permitted to retain title while giving possession of the property to the vendee. One of these states is Colorado. In Turnbull v Cole, 70 Colorado 364, 25 A. L. R. 1149, the court held:

"1. A conditional sales contract good in the state where made will not be given effect in another state where such contracts are without force, since they are contrary to the public policy of the latter state, and would result in detriment to the interests of citizens of such state."

This case was followed in Colorado in the case of Commercial Credit Co. v Higbee, 1933, 20 Pac. (2nd) 543.

Illinois has a similar rule with reference to conditional sales contracts and the Courts of Illinois have reached the same result as Colorado. See Judge v Evans, 109 Ill. App. 154. See also Hervey et v Locomotive Works, 93 U. S. 664.

In the case of Universal Credit Company v Marks (Md.) 163 Atl 810, a conditional sales contract was made and registered in New York. The vendee brought the car into Maryland and had repairs made on the car in a Maryland garage. A Maryland statute gives the garage man a lien in such a case. The court held, syllabus 22:

"Law of place where conditional sales contract is made and where it is performed generally governs its construction and operation in all states but validity will not be sustained in another state, if it contravenes settled policy of foreign state."

On the basis of this principle, the Maryland court sustained the lien of the garage man, stating:

"Neither the lien, if there be such given by the statute of New York to secure the credit payment for a chattel sold, with title retained as security, nor a contract to that effect made in the foreign state should have superiority over the subsequent lien which has been acquired in good faith under the Maryland statute, in reliance upon the apparent ownership, use, and control or implied authority to contract as owner, of the person obtaining the service and delivering the motor vehicle into the possession of the garageman. A different construction would defeat the terms of the statute in force in the state where the artison's lien was created."

The principle of this Maryland decision is recognized in the Restatement of the Law on Conflict of Laws, Section 268, which by Section 872 applies to conditional sales of chattels. Section 268 reads as follows:

"1. If, after a chattel is validly mortgaged, it is taken into another state without the consent of the mortgagee, the interest of the mortgagee is not divested as a result of any dealings with the chattel in the second state.

"2. Dealings with the chattel in a state into which it is taken without the consent of the mortgagee may result in new liens which have preference over the mortgage."

And on page 394 is the following comment:

"A dealing with the chattel in the second state may, if such is the law of the second state, create a new lien and give the lien preference over the mortgage, preserving the mortgage intact. This is accomplished by subjecting the chattel to a lien without regard to the title thereto. This happens at common law in several cases much as a lien for salvage, and a lien for the expense of a receivership; and frequently in admiralty."

We therefore conclude that a judgment for the plaintiff is not required

in this case on any principle of comity.

It has been urged that this conclusion leaves the door wide open to fraud. It has been claimed also that it will permit a thief to pass good title to a motor car if he can cajole or persuade a clerk of courts to issue to him a certificate of title for the stolen car.

It is possible that a constitutional question might be raised by the true owner in such a case, that is not open to the plaintiff in this case, but our forceful answer to this contention is, in the first place, that this is a matter which more properly could be urged before the General Assembly than to this Court. When the Legislature has ▮▮▮▮▮▮▮ ▮ spoken clearly and unequivocally it becomes the duty of the court to interpret the law and not to amend it, or to remake it because the Court may imagine that it could write a better law.

In the second place, this claim presumes that the Clerk of Courts will fail in the performance of the duty imposed on him by statute. It is true that in this case a certificate of title was issued to Welikson when, if the clerk had been in possession of all the facts such a certificate would not have been issued. It is interesting to see how the clerk was imposed on in this case. While Welikson was a resident of Mansfield it became necessary for him to secure an Ohio license. To accomplish this, it was necessary for him to file with the Clerk of Courts a sworn statement of ownership of the car as required by §6310-13, GC, then in effect. Under this section, the clerk was not called upon to make any decision or finding as to the ownership of the car, but only to certify that such a sworn statement of ownership had been filed in his office. The sworn statement filed by Welikson in Richland County made no reference to the interest of plaintiff in the car and was therefore false to that extent.

Welikson then took this statement with the certificate of the clerk that such a statement had been filed, with him to Cuyahoga County and in his application for a certificate of title it is stated that the evidence of his owner-ship of the car was the sworn statement of title filed by him in Richland County and certified to by the Clerk of Courts of that county.

It is evident that such a statement gained nothing from the certificate of the clerk. It is also evident that the clerk in Cuyahoga County before issuing any certificate of title to a stanger, should not have been satisfied with the sworn statement of ownership but should have required Welikson to produce his bill of sale for the car. The application for a certificate of title states that Welikson had acquired the automobile from one William Goodman of Mansfield, Ohio. He must have acquired it before December 2, 1937, when he filed his sworn statement of ownership in Richland County and if the transaction had been regular the bill of sale from Goodman to Welikson would have been on record in Richland County.

The Clerk of Courts in Cuyahoga County therefore should have demanded that Welikson produce the original bill of sale and failing that, a certified copy from the records in Richland County, all of which he failed to do. Had he done so, the fraud would have been discovered before any certificate of title was issued.

The fact that Welikson succeeded in perpetrating a fraud and obtaining a certificate of title in this case does not indicate that the plain provision and the definite policy of the certificate of title law should be circumvented and undermined but it does suggest that the administration of the Act can be strengthened by the exercise of more caution which will make difficult if not impossible, any second case of this kind.

The plain purpose of the certificate of title law is to make the certificate of title a complete state-▮▮▮▮▮▮▮ ▮ ment of the title of any motor car with a notation of all liens and claims against it. It is clearly intended by the law that any person purchasing a car has the right to rely on the certificate of title for these facts.

To give judgment for the plaintiff in

this case would defeat the plain purpose of the statute and the policy of the law and we do not believe that comity or any other principle calls for such a result.

The judgment is affirmed.

LIEGHLEY, J., concurs in judgment.
TERRELL, PJ., dissents.

By TERRELL, PJ., (Dissenting)

It is readily seen that Welikson appears in this transaction just the same as a thief who stole an automobile in New York and brought it to Ohio and by fraud and perjury procured a certificate of title in his own name.

Does the Automobile Certificate of Title Law, Volume 117, Ohio Laws, 373, grant to a thief the right to obtain a fraudulent and false certificate of title and through it to transfer good title to another? It does not appear to the writer that such a violent departure from the heretofore accepted laws of property was contemplated by the the legislature.

The title of this automobile registration act is "to prevent the importation of stolen motor vehicles and thefts and fraud." It would open the doors wide to thieves and wrongdoers, and by an invitation to them to do the very things which the statute intends to prohibit.

From the act itself it would appears that the mere paper certificate of title does not in all events import absolute title. The certificate of title may be invalidated. No place in the act does it state that the certificate of title guarantees absolute ownership. It may be used as evidence of ownership. (§6290-4, GC.)

Sec. 6290-7, GC, provides:

"If it appear that a certificate of title has been improperly issued, the registrar shall have the power and it shall be his duty to cancel the same."

Apparently one who acquires subsequent title under a certificate of title that has been invalidated by the registrar deals with the first certificate of title holder at his own risk.

Sec. 6290-8, GC, provides that the registrar shall make a record of reports of thefts or conversions of automobiles. This would be a futile requirement by the legislature if such a theft did not invalidate a certificate of title in the name of the thief.

The tenor of the act pertaining to mortgages and conditional sales contracts is that such mortgages and conditional sales contracts hereafter made, shall be shown on the certificate of title but that such mortgages and conditional sales contracts in existence when this act became effective shall continue under the law then in effect. At the time this act became effective, the settled law of the state was to recognize a conditional sales contract which was properly executed and recorded in the state where made. Plaintiff's conditional sales contract was properly made and recorded in New York State according to the laws thereof. The said contract was not "hereafter" made but was made before the certificate of title law became effective. I think it would follow then that the certificate of title law does not apply to plaintiff's conditional sales contract.

The mere recording of a title with an official recorder cannot of itself validate such title which in itself is otherwise invalid or non-existent. This would apply to the recording of a certificate of title of an automobile with a county clerk just the same as the recording of a deed of title to real estate with a county recorder.

For the foregoing reasons I dissent from the opinion of the majority. The conditional sales contract of the plaintiff should have been recognized and given effect by the trial court and judgment should have been rendered for the plaintiff.