No. ——.

First Circuit

——

PAN-AMERICAN LIFE INSURANCE CO.
v. REYNAUD

——

(January 28, 1926, Opinion and Decree)

——

(*Syllabus by the Editor.*)

1. Louisiana Digest—Fixtures—Par. 2, 4.

Under Article 468 of the Civil Code a pumping plant which the owner of a tract of land placed upon it for its service and improvement is immovable by destination.

2. Louisiana Digest—Privilege—Par. 7.

The holder of a privilege on a thing, a movable pumping plant which has become part of the realty, an immovable, loses his privilege if he permits the whole immovable to be sold in a foreclosure sale without provoking a separate appraisement on the thing on which he claims a privilege.

3. Louisiana Digest—Privilege—Par. 1.

A privilege, once destroyed remains destroyed and cannot be brought back into existence.

Appeal from the Parish of St. Martin, Hon. James Simon, Judge.

Action by Pan-American Life Insurance Company against L. L. Reynaud, Stauffer Eshleman and Company, third opponent. There was judgment maintaining the third opposition and plaintiff appealed.

Judgment reversed dismissing the third opposition and granting judgment to the plaintiff.

Eugene McGivney and Soloman Goldman, of New Orleans, attorneys for plaintiff, appellant.

Voorhies and Labbe, of Lafayette, attorneys for defendant, appellee.

LECHE, J.    L. L. Reynaud, the defendant, owned lands in the Parish of St. Martin, which he cultivated in whole or in part, as a rice farm.  On the 5th day of January, 1920, he bought from Stauffer-Eshleman & Co., third opponents, a pumping outfit which he installed on his rice farm for the purpose of irrigating the rice crops which he was raising and growing thereon.

On May 25, 1920, Reynaud granted a mortgage of some twenty-five thousand dollars, which was acquired by the Pan-American Life Insurance Company, plaintiff in this suit.  The act of mortgage was recorded the same day.

At the same time, May 25, 1920, Reynaud gave another mortgage, inferior in rank however, to that held by plaintiff, for about eighteen thousand dollars, which was also recorded the same day, and which was acquired by the American Bank & Trust Company.

Both of these mortgages bore on the same land on which the pumping machinery bought from Stauffer-Eshleman & Co. had been installed.

It may be stated also, though that fact has no bearing in this controversy, that the Stauffer-Eshleman & Co.'s lien was only recorded on May 11, 1922.

On September 25, 1923, the American Bank & Trust Co., holders of the second mortgage, obtained executory process under which the land mortgaged by Reynaud, together with the buildings and improvements thereon, or to be erected, right, ways, privileges, and appurtenances thereunto belonging, was sold at public sale on December 1, 1923.  That sale brought enough to cover the amount of the first mortgage, which was retained by the adjudicatee the American Bank & Trust Co., and enough to satisfy their second mortgage up to the sum of five hundred and forty-four 31-100 dollars.

Stauffer-Eshleman & Co. made no appearance in that foreclosure and did not intervene or oppose the distribution of the proceeds of sale.  The whole property together with the buildings, improvements and appurtenances was adjudicated as aforesaid, to the seizing creditor, the American Bank & Trust Company.

Thereafter, on April 5, 1924, the Pan-American Life Insurance Company, holder of the first mortgage still unpaid, also obtained executory process under which the same property was advertised to be sold and was actually sold on September 3, 1924.  In this proceeding Stauffer-Eshleman & Co. intervened, obtained a separate appraisement and sale of the pumping plant which they had sold to Reynaud, and the proceeds of sale of said pumping plant, viz: One thousand dollars was retained by the sheriff and is claimed by them by privilege, preference and priority over plaintiff, the Pan-American Life Insurance Company.

There is some discussion in argument of third opponent as to whether the pumping plant was so attached to the soil as not to be removable. . But that matter is of

little importance under the issues in this case, for it is only necessary to pass upon that question in order to determine the kind of privilege, whether it is that of a vendor or that of a furnisher of material, by which the thing or object is secured and whether it can be sold separately and removed without harming the immovable to which it is attached. Such was the question passed upon and decided by the Supreme Court in the case of Walbun-Swanson vs. Darrell, 49 La. Ann. 1044, 22 South. 310. It may be conceded and in fact it is not disputed in this case, that the pumping outfit sold to defendant and installed by him on his land in order to irrigate the same, may be taken away and removed without injury to the land, the immovable upon which it is situated. It may further be conceded that the privilege of opponents if any they have is that of a vendor and that the pumping plant upon which such privilege at one time did exist, could be appraised and sold separately.

It is obvious that the fact that the pumping plant was not so imbedded in the soil as to be irremovable, does not make it a movable any more than a mule or a plow that is purchased and placed upon a farm for its service and improvement, retains its status as a movable because it is not imbedded into the soil. The immovable status of such property is fictitious in fact, but real in law, and that is the purpose of the Code in prescribing that certain movables become immovable by destination, C. C., Art. 468 says that "things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination".

It cannot be nor is it contended that the pumping plant acquired by Reynaud was placed upon his land for any other purpose than its service and improvement.

When, therefore the sale of December 1, 1923, took place the pumping plant, immovable as part of the realty, was acquired in full ownership by the American Bank & Trust Company. That sale was as valid as if it had been provoked by the first mortgage creditor, the price realized being more than sufficient to pay the outranking and prior mortgage of plaintiff in this proceeding.

The effect on the part of Stauffer-Eshelman & Co. in permitting the land to be sold without intervening and opposing the distribution of the proceeds of sale, was to cancel and annul their privilege, if any they had. The decision in Sundberry vs. Bertie Sugar Company, 145 La. 700, 82 South. 857, wherein the trial judge, in that case, the judges of this court and the writer of this opinion then sitting in the Supreme Court, were of a different opinion, clearly establishes the doctrine that the holder of a privilege on a thing, a movable, which has become part of the realty, an immovable, loses his privilege who permits the whole immovable to be sold in a foreclosure sale, without provoking a separate appraisement of the thing on which he claims a privilege. If then the inaction of Stauffer-Eshleman & Co. caused them to lose their privilege, if any they had, how can they claim that any subsequent conduct on the part of the American Bank & Trust Co., brought that privilege back into existence. The privilege, if any, once destroyed, remained destroyed. The transfer made by the American Bank & Trust Co., of the whole property on September 3, 1924, to the Pan-American Life Insurance Company could have no effect upon the status of third opponent's claim and revive the privilege, if any, securing same which had been extinguished on December 1, 1923, when the foreclosure sale was made to the American Bank & Trust Co.

In discussing this case, no opinion is expressed as to whether third opponent's privilege outranked the mortgages held by the plaintiff, the Pan-American Life Insurance Co. and the American Bank & Trust Co., for having been recorded over two years after its creation and long after these mortgages were recorded. It is obviously not necessary to pass upon that question in deciding the present controversy.

For these reasons the judgment of the trial court, maintaining the third opposition of Stauffer-Eshleman & Co., should be reversed, the said opposition dismissed, and the funds held in the sheriff's hands should be paid to plaintiff and it is so ordered.