AMERICAN SECURITY CORP., APPELLEE, *v.* MARTIN, APPELLEE; PETRAS, APPELLANT.

(No. 308—Decided April 5, 1948.)

*Messrs. Parker & Fenton,* for appellee American Security Corporation.

*Mr. David A. Webster,* for appellant.

CARPENTER, J. This action started as one in replevin by the plaintiff-mortgagee to secure possession of a motor vehicle. By amended petition filed without objection, the action was converted into an action to foreclose the mortgage.

An oral motion to dismiss this appeal on questions of law first claims the attention of the court. That motion was made during the argument herein. It was based upon the inaccurate designation of the date of the judgment in the notice of appeal.

The material facts on this phase are as follows:

Judgment for the defendant was entered November 19, 1947. On the 20th, a motion for a new trial was filed, which was overruled on the 21st. On December 3, defendant-appellant filed a notice of "his intention to appeal from the judgment rendered by the Court of Common Pleas on the 18 day of December, 1947."

The only judgment from which an appeal could be taken was that entered November 19, 1947. Does this obvious mistake in the date of the judgment require the dismissal of the appeal?

Appellant's brief was filed in season and so were the answer and reply briefs. No claim is made by plaintiff-appellee, in its brief or in support of its motion to

dismiss, that it was confused by the date of judgment stated in the notice, or that it was in any way prejudiced by this manifest error in the dating.

Our courts have been liberal in permitting amendments of a timely notice of appeal, as is contemplated in Section 12223-5, General Code. *Loos* v. *W. & L. E. Ry. Co.,* 134 Ohio St., 321, 16 N. E. (2d), 467; *Capital Loan & Savings Co.* v. *Biery,* 134 Ohio St., 333, 16 N. E. (2d), 450 (wherein no separate notice of appeal was filed, only a statement at the end of the counsel-approved entry overruling the motion for a new trial that "defendants hereby give notice of appeal"); *Couk* v. *Ocean Accident & Guarantee Corp.,* 138 Ohio St., 110, 33 N. E. (2d), 9; *Mosey* v. *Hiestand, Trustee,* 138 Ohio St., 249, 34 N. E. (2d), 210 (where the dates of the judgment were as far from the correct dates as in this case, only the report does not show that they were after the filing of the notice); *In re Wisner,* 148 Ohio St., 31, 72 N. E. (2d), 751. In *Bank of Elmore Co.* v. *Damschroder,* 69 Ohio App., 15, 42 N. E. (2d), 781, this court followed the above cited decisions. It will do so herein, and the motion to dismiss will be overruled, and appellant's oral motion for leave to amend his notice to correct the date of the judgment will be granted.

The facts are undisputed, which are material to the determination of the merit issue, *i. e.,* whether the plaintiff-mortgagee or the defendant-garageman who did work and furnished material to make necessary repairs to the motor vehicle, a commercial truck, has the prior lien upon it.

On January 13, 1947, defendants Gordon A. Martin and Vera E. Martin, who resided in DeKalb county, Indiana, were the owners of the truck. On that day, they gave the plaintiff at Ft. Wayne, Allen county,

Indiana, a note for $578.25 and a chattel mortgage on the truck and their household goods to secure it. The same day, plaintiff filed the mortgage in the office of the recorder of Allen county, Indiana.

The truck, having been damaged in a collision, was, on January 2, 1947, left by Martin for repair at the garage of defendant-appellant, Nicholas Petras, at Edgerton, Ohio. During the month of January necessary repairs, including a new motor, were made. The bill for this was over $500. About February 1, 1947, Petras voluntarily permitted Martin to take the truck, and he used it in his business for about four weeks. The latter part of February, Martin drove it into Petras' garage at Montpelier, Ohio, and, as the repair bill had not been paid, Petras took possession of the truck and kept it until April 21, 1947, when it was taken from him under a writ of replevin herein. The plaintiff claimed the truck as a special owner, under plaintiff's mortgage. When Petras took the truck from Martin at Montpelier, he was told about the plaintiff's mortgage.

On June 2, 1947, plaintiff filed its amended petition, alleging in separate causes of action its note and mortgage and prayed for judgment and foreclosure. To this Petras, on July 8, 1947, filed an answer in which he denied all the allegations of the petition except the one that he claimed some right or lien on the truck. He alleged that the mortgagors, the Martins, resided in DeKalb county, Indiana; that the chattel mortgage, not having been filed in that county as required by the statutes of that state, was invalid; and that his artisan's lien was prior to it, and he prayed for its foreclosure. In effect, this was a cross-petition.

On August 18, 1947, plaintiff filed its mortgage with the recorder of DeKalb county, and by amendment to

its amended petition, set up that fact. Petras filed an amended answer which was, so far as here material, the same as his answer. Although his answer and amended answer were in part cross-petitions to foreclose his alleged lien, no process was had thereunder against the truck. This situation well illustrates a point lawyers too often overlook—the tactical advantage of strengthening one's own cause while time and opportunity permit, rather than being too much concerned about the weaknesses of the opponent's cause.

While no reply or answer was filed to this so-called amended answer, the cause was tried as though its allegations were denied.

By agreement of the parties and under the supervision of the court, the truck was sold by the sheriff and the proceeds were placed in the hands of the clerk of courts to await the final determination herein.

In *Metropolitan Securities Co.* v. *Orlow,* 107 Ohio St., 583, 140 N. E., 306, 32 A. L. R., 992, paragraph one of the syllabus, a common-law artisan's lien on a chattel is recognized as valid in Ohio "while he retains such chattel property in his possession." Possession voluntarily surrendered extinguishes that type of lien. 33 American Jurisprudence, 434, Section 29; *McFerran* v. *Louisville Title Co.'s Recr.,* 254 Ky., 362, 71 S. W. (2d), 655; *Potter* v. *Foster,* 16 Tenn. App., 336, 64 S. W. (2d), 520.

In *Seebaum* v. *Handy,* 46 Ohio St., 560, 22 N. E., 869, a liveryman's lien on a horse for feed, care and shoeing, under the statute, is likened to the common-law artisan's lien. At page 566 of the opinion it was said of such liens:

"The nature and incidents of a common-law lien of this kind are well settled. It is a right to retain property until certain claims against it are satisfied; and

possession is not only essential to its creation, but also to its continuance. Where the party voluntarily parts with the possession of the property upon which the lien has attached, he is divested of his lien.''

Among other decisions in support of this principle, there was cited and quoted *McFarland* v. *Wheeler* (N. Y.), 26 Wend., 467, wherein the owner of a saw-mill who had milled some lumber for defendants there sought to replevin it after he had permitted them to move it from his millyard and to pile it on the bank of a canal a half mile away. It was expressly agreed by them that his lien upon it for the mill charge should remain as if the lumber were still piled in the millyard. Notwithstanding this agreement, the lien was lost. It was said in that opinion on page 473:

''The very definition of the word, *lien,* as 'the right to retain,' indicates that it must cease when the possession is relinquished. This principle, so clearly founded in reason and so congruous to public utility and the convenience of trade, is supported by the uniform testimony of the decisions. Thus said Lord Kenyon, 'the right of *lien* has never been carried farther than while the goods remained in possession of the parties claiming them.' 1 East., 14. This remark was cited with approbation by Lord Ellenborough in *McCombie* v. *Davies,* 7 East., 7, and the whole current of decisions in equity and common law in England and in the United States, is the same way.''

When Petras voluntarily parted with the possession of the truck to Martin he lost his lien and became a general creditor. Repossession of the property could not re-establish that lien. *Pan-American Life Ins. Co.* v. *Reynaud,* 4 La. App., 290; *People* v. *Photo,* 45 Cal. App. (2d), 345, 114 P. (2d), 71. He did nothing to recover it, as he might have done by attachment, execu-

tion, or, perhaps, by mortgage from Martin. Martins, being nonresidents of the state, an attachment proceeding would have been relatively simple.

Under Section 12102-31, General Code, the courts of this state must take judicial notice of the "statutes of every state," but the General Assembly did not adopt for Ohio the further provision of the Uniform Judicial Notice of Foreign Law Act that judicial notice would be taken of the nonstatutory or common law of another state. In the absence of record proof of what that law is, the presumption is that it is the same as the Ohio common law. *Heater* v. *Mittendorf, Exrx.,* 72 Ohio App., 4, 50 N. E. (2d), 559.

The state of Indiana does not have a statute requiring the registration of mortgages on certificates of title of motor vehicles as does Ohio, but such liens are governed by the general statute applying to all chattel mortgages.

Under Section 51-509, Burns, Statutes of Indiana, it is provided:

"Any chattel mortgage executed under and pursuant to this act (the chattel mortgage law), or any instrument intended to operate as such, shall be filed in the county where the mortgagor, if a resident of the state, resides at the time of the execution thereof; * * *."

Martins were residents of DeKalb county when they executed that mortgage, hence its filing in Allen county gave it no effect as a lien as to third persons and it was not until August 18, 1947, when it was filed in DeKalb county, that it operated as such lien.

It is not necessary to determine herein whether the replevin or the foreclosure proceedings gave plaintiff an effective lien under its mortgage. The filing of it in DeKalb county had that effect.

Petras, by his voluntary surrender of possession of the truck to Martin, lost his artisan's lien, and, he

having done nothing that would give him a lien before August 18, 1947, the trial court had no alternative but to conclude, as it did, that plaintiff was entitled to the proceeds of the sale of the truck. The judgment will be affirmed.

*Judgment affirmed.*

CONN and FESS, JJ., concur.