**JUSTICE, Plaintiff, v. BUSSARD, Defendant.**

Municipal Court, Dayton.

No. 25042. Decided February 3, 1953.

462

John P. McHugh, Dayton, for plaintiff.
C. J. Stoecklein, Dayton, for defendant.

## OPINION

By McBRIDE, J:

This case in replevin was submitted to the court on the following agreed statement of facts, to which a photostatic copy of the certificate of title was attached:

"It is stipulated and agreed by and between counsel for the respective parties hereto, that the Plaintiff is the owner of a 1934 Dodge four-door sedan automobile, a photo copy of

the certificate of title of said automobile is attached hereto and made a part hereof.

"That Plaintiff, Eugene Justice, took his said automobile to the Defendant, W. E. Bussard, who operates a one-man repair shop for automobiles under the name Circle Garage at 3311 N. Dixie Drive in Montgomery County, Ohio.

"That before commencing any work on said automobile, the Plaintiff signed a written work order or contract with the Defendant herein ordering Defendant to make the following repairs on said automobile to-wit:

"Overhaul motor (necessary parts)

"Overhaul clutch (necessary parts)

"Repair brakes

"Align front end (necessary parts)

"Transmission (necessary parts)

"Cut fender."

That said written work order and agreement which Plaintiff signed had printed thereon above the place where Plaintiff signed his name the following statement:

"I hereby authorize repair work to be done as described above with necessary parts, to be listed at your regular prices. I agree to pay cash on delivery of car or, on satisfactory terms to you; and until paid in full it shall constitute a lien on this car. I further agree that you will not be held responsible for car or articles left in car in case of fire, theft, accidents or other causes beyond your control. My car may be driven by your employes for road tests at my own risk."

"It is further stipulated that the Defendant herein in addition to the written order above mentioned, required the Plaintiff herein to deposit with him the certificate of title for said automobile, which the Plaintiff herein did, and the Defendant herein still retains the said certificate of title. The certificate denotes title in the Plaintiff. There is no notation of lien on said certificate by the Defendant herein.

"It is further stipulated that upon request of the Plaintiff the Defendant gave to Plaintiff a rough estimate on the cost of said repairs to be between $150.00 and $200.00.

"That on August 2, 1952, the Plaintiff paid to Defendant the sum of $40.00 and made a subsequent payment of $30.00.

"That when the car was finished the total bill for repairs and necessary parts ran to $311.44.

"Plaintiff made no further payments to Defendant and on October 11, 1952, the Plaintiff brought this action in replevin, and gave customary bond in replevin. Plaintiff admits he still owes the Defendant under said agreement, but not as much as Defendant claims.

"That after the replevin suit was filed herein and during

the time this matter was pending but before the case was submitted to the Court on this agreed statement of facts, counsel for the Defendant took the original certificate of title involved herein to the Automobile Title Division for Motor Vehicles in the basement of the Court House in Dayton, Ohio, and requested that Defendant's lien contract which he had secured from Plaintiff be noted on said certificate, and that the deputy in said Automobile Title Division informed counsel for Defendant, that the only thing he had the right and the power to note on said certificate was a chattel mortgage signed and executed according to law by the owner of the automobile.

"IN WITNESS WHEREOF, we have hereunto set our hands this 23rd day of January A. D. 1953.

/s/ John P. McHugh
Attorney for Plaintiff
/s/ C. J. Stoecklein
Attorney for Defendant."

\* \* \* \*

The motor vehicle was taken from the defendant-garage mechanic and delivered to the plaintiff, who posted bond.

The only issue briefed and the question we are asked to decide is the effect of §6290-4 GC on the common law artisan's lien where third parties are not involved.

\* \* \* \*

A common law lien is the right of a person to retain that which is in his possession, but belonging to another, until certain demands—usually payment for services and repairs —are paid by the owner. 25 O. Jur., 349, 4 O. Jur., 774. The right of the artisan who furnishes materials or performs labor on chattel property to a lien on such property for the reasonable or contractual value while he retains such chattel property continuously in his possession is of ancient origin. It has been consistently recognized in Ohio even though the legislature has never created such a lien. 25 O. Jur., 353.

The recording statutes provided an encroachment on this common law claim of the artisan. In 1923, in **Metropolitan Securities Company v. Orlow, 107 Oh St 583,** the court held that—

"Where such chattel property is encumbered by a valid chattel mortgage, properly executed and filed, according to the statutes of Ohio in such cases made and provided, such record is constructive notice to persons who thereafter perform labor or furnish materials in repairing such chattel property, and the common law lien of such artisan is subordinate to the lien of the mortgagee thereon."

The artisan's lien on personal property continued to exist, subject to the statutory provisions which protected the prior recorded lien of a chattel mortgage.

In 1938, a far reaching change was made in Ohio laws respecting titles to motor vehicles and mortgages or other instruments that might be filed on such personal property. Every effort appears to have been made in the certificate of title law to create in the certificate a sacred instrument, incorporating thereon all of the rights and claims in the property and forbidding any court, in law or in equity, from recognizing any claim, interest or lien unless such claim is evidenced on the certificate. The certificate of title law fails to except artisans' liens and makes no provision for the recording of such liens. **Sec. 6290-9 GC.**

**Sec. 6290-4 GC** states:

"No person * * * hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have issued to him a certificate of title * * *. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title * * * in accordance with the provisions of this chapter."

One of the first cases under the certificate law is **Automobile Finance Company v. Munday, 137 Oh St 504, 19 O. O. 176,** decided December 31st, 1940. One paragraph at the end of that opinion is very appropriate here.

"Under the facts in this case, the plaintiff below was not entitled either to the right of property or the right of possession of this automobile. Although Usinger's right of property may be defective by reason of his lack of possession of a certificate of title, the evidence clearly establishes that he had the right of possession. REPLEVIN WILL NOT LIE AGAINST ONE WHO HAS THE RIGHT OF POSSESSION AT THE TIME OF THE COMMENCEMENT OF THE SUIT."

A recent and now famous case is that of **Mielke v. Lieberson, 150 Oh St 528, 38 O. O. 352,** decided December 29th, 1948, which held in a negligence case that:

"Under the plain and unambiguous language of §6290-4 GC, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment."

The court indicated that while there was evidence of the plaintiff's ownership, such evidence can never be sufficient as to motor vehicles without the production of a certificate of title. As indicated by the court, the language of §6290-4 GC, is not only sweeping but is unrestricted and unlimited. See also **Kelley Kar Company v. Finkler, 155 Oh St 541, 44 O. O. 494.**

On June 26th, 1939, the Court of Appeals of Cuyahoga County in **Union Commercial Corporation v. Schmunk Company, 30 Abs 116,** said that §6290-4 GC is clear and unequivocal and applies but for the one exception in §6290-9 GC, as to encumbrances filed prior to the effective date of the certificate of title act. In this case, the court held:

"Syl. 6. When the legislature has spoken clearly and unequivocally, it becomes the duty of the court to interpret the law, and not to amend it or to remake it because the court may think it can write a better law.

"Syl. 7. The plain purpose of the certificate of title law is to make the certificate of title a complete statement of the title of any motor car with notations of all liens and claims against it, and any person purchasing a car has the right to rely on the certificate of title for these facts."

\*      \*      \*      \*

In view of the many decisoins that have recently appeared under this law, it is unusual that the apparent conflict between the holder of a certificate of title and one holding a common law artisan's lien has not been resolved. The only authoritative decision that we have been able to find is that of **Schiefer v. Schnaufer, 71 Oh Ap 431, 26 O. O. 363,** decided January 13th, 1943. It would appear from that case that in Indiana, the artisan may record his lien on motor vehicles. This was done and a judgment secured in that state for foreclosure of the mechanic's lien. However, the vehicle was transferred and when the case arose in Ohio, the purchaser had obtained a certificate of title on which no liens were recorded. The court held:

"A person having furnished repairs upon an automobile in a sister state and having thereafter secured a judgment in such state for the value of the repairs with no mention by the court of a foreclosure of a lien, cannot have his claim against such automobile enforced in this state against a bona fide purchaser of the automobile who relied upon a certificate of title containing no notation of such claim or lien."

The court indicated that §6290-4 GC "practically foreclosed" the court from recognizing the right of the mechanic, acquired by virtue of the statutes of Indiana. The title was described as a "certificate of immunity from liens" and the

court said that until the Supreme Court determined the rights between a clear certificate of title and the holder of a prior recorded artisan's lien under the laws of a sister state, it was content to follow the provisions of §6290-4 GC.

Sec. 6290-4 GC has been vigorously applied in recent years in numerous other cases, however, the question of the rights between the holder of a certificate of title and the artisan's common law lien does not appear to have been decided.

*     *     *     *

The law recognizes the distinction between title and possession. While possession, which is the heart of common law artisan's lien, is not mentioned in the statute, it is clearly included in the plain and unambiguous expression, which covers any "claim, or interest * * * in or to any motor vehicle, * * *." If we accept the language of only this portion of the statute for what it says, §6290-4 GC prohibits any court from recognizing the right to possession which by its very nature is not evidenced on the certificate of title, however, statutes may not be dissected and construed separately. The purpose of this law is to protect titles and such liens as it permits to be recorded and otherwise avoid fraud in the purchase and sale of property which by its very nature moves almost as rapidly as currency. The sentence in §6290-4 GC which we are asked to interpret states that the prohibition in question applies to any motor vehicle, hereafter **SOLD OR DISPOSED OF, OR MORTGAGED OR ENCUMBERED * * *.**

This expression describes transactions which the act, and this section in particular, was intended to include. Delivery to another and simple loss of right to possession of a motor vehicle is not a sale or transfer, nor is it a mortgage or encumbrance as these words are generally used. The expression "disposed of" is employed to include any other final action or transfer of title such as gift, bequest, or the like, which does not constitute a sale. The word "encumbrance" is similarly used to include any formal lien which could not properly be classified as a chattel mortgage. The common law right of an artisan to retain possession until he has been paid for his labor is usually designated a lien but it cannot be termed either a mortgage or an encumbrance within the purpose and intent of this statute. Accordingly, it is the opinion of the court that §6290-4 GC does not abrogate the common law lien of an artisan and does not prohibit the court from recognizing and enforcing the possessory right of a garage repairman as between the immediate contracting parties. The construction this court has applied to this section appears to be substantiated by other sections of this

act which carefully avoid any reference to and confers no additional rights upon those who may acquire possessory rights to a vehicle either by contract or under the common law.

It is difficult to find another situation to which this interpretation might apply, however, some analogy may be found in the rental of an automobile. If a "drive it yourself" company rented a motor vehicle for thirty days, the transaction would not constitute either a sale or disposal of the car. Under those circumstances and in the absence of any default, could the company successfully replevin before the expiration of the contractual period?

It is true that the legislature may generally abrogate the common law and, if this court be in error, the legislature may have done so, however, such an astonishing conclusion is not apparent although the language is not as plain and unambiguous as in other situations. In view of the interpretation the court has given to this section, we do not reach or discuss whether abrogation of the artisan's lien by a rule of evidence falls within **Article I, Sections 1 and 16 of the Constitution of Ohio.**

An altogether different situation exists where the certificate is mortgaged, assigned, or is in the name of another. **Schiefer v. Schnaufer, 71 Oh Ap 431, 26 O. O. 363; Metropolitan Securities Company v. Orlow, 107 Oh St 583.**

In this case, the fact that the garage repairman obtained and held physical possession of the certificate of title is of no legal significance as mere possession of a certificate without assignment transfers no right, title or interest. **Pierce v. Aid Investment and Discount Company, 88 Oh Ap 193, 44 O. O. 219.** However, possession of such certificate is a practical precaution against fraud because of the inconvenience such owner would experience in executing an assignment to a third party and because the certificate reveals the condition of the title and the existence of liens. **Sec. 6290-11 GC.**

The right to replevin is established where the plaintiff is entitled to immediate possession and the detention by the defendant is wrongful. Title alone is insufficient. **35 O. Jur.** 462 et seq. In this case, the plaintiff has failed to show a right to possession and cannot, without repudiating his own contract, say that the detention is wrongful. An entry may be prepared finding generally for the defendant.