SHEARER, APPELLEE, *v.* BILL GARLIC MOTORS, INC., APPELLANT.

(No. H-77-7—Decided September 16, 1977.)

*Mr. Frank H. Bennett,* for appellee.
*Mr. Roger D. Paul,* for appellant.

BROWN, J. This case is an appeal by the defendant from a judgment on a jury verdict in favor of plaintiff in the sum of $1,600 against the defendant after the trial judge had instructed the jury that the defendant as a matter of law had committed a conversion of plaintiff's automobile. The only issue submitted to the jury was the damages caused plaintiff based on the value of the plaintiff's automobile at the time of the conversion.

The complaint of plaintiff claimed that the defendant had converted a 1969 Oldsmobile owned by plaintiff and that the value of the auto at the date of conversion was $2,650. The defendant admitted plaintiff had title to the automobile in question and defendant had possession of

*it.* It claimed, as a defense to the alleged conversion, an artisan's lien for labor on the automobile and counterclaimed for the fair market value of the labor.

Referring to the parties as they were designated in the trial court, the record shows the following undisputed facts. Plaintiff purchased the automobile, with a warranty, from the defendant in December 1968. The automobile was brought into defendant's garage by plaintiff or her son from time to time for repairs, which, except for a clutch adjustment and greasing and oil, were made under warranty, including the replacement of the motor in October 1969. While plaintiff's son was operating the automobile subsequently, it developed engine trouble. After plaintiff's son contacted the defendant, the defendant arranged to have it towed to his garage. The car was partially dismantled, including the engine, and still remains so since defendant advised plaintiff the trouble was not covered under the warranty. Nothing was done to the body of the car. Thereafter, the evidence is conflicting. Defendant's representative claims he told plaintiff she would be liable for any expenses. Plaintiff claims no one told her there would be any charges and that the service manager told her it would be taken care of under the warranty. Later the plaintiff was told by a representative of defendant that there was a charge of fifty-two dollars and that she could not have the automobile until she paid that sum, and he instructed employees not to give plaintiff her automobile. The plaintiff refused to pay "the cost of repair" and the automobile is still held by the defendant. Testimony revealed that the automobile had not been cared for and parts are now missing.

At the trial, the court stated in the jury instructions as follows:

"I now instruct you that as a matter of law, there is no repairman's lien in this case and I further instruct you that as a matter of law, the defendant did commit an act of conversion of plaintiff's automobile in this case."

The defendant Bill Garlic Motors, Inc., assigns as error that the trial judge's direction to the jury that a conver-

sion had occurred as a matter of law was error. Defendant contends that while an automobile is in its possession an artisan's lien arises as a result of services performed on the car. To determine whether an artisan's lien arose it must be determined whether the nature of the labor performed by defendant on plaintiff's automobile is of the nature to support such a lien. The defendant admits the services that an artisan performs to create a lien must be to maintain or enhance the value of the personal property.

There is no dispute that services were performed on the motor and that other parts were removed and so remain removed. Defendant argues that by dismantling the automobile to some extent the value of it was increased. Defendant claims the fact of repair is not a requisite to having an artisan's lien attach. Defendant relies upon the following authority:

" ' * * * [I]f a party has bestowed labor and skill on a chattel bailed to him for such purpose, and thereby improved it, he has by general law a lien on it for the reasonable value of his labor or the right to retain it until paid for such skill and labor.' " *Bankers Commercial Security Company v. Coffman* (1919), 22 N. P. (N. S.) 193, 195.

The foregoing is considered good law and as applied to the facts of this case an artisan's lien is created upon the plaintiff's automobile on the basis that the automobile was repaired and improved to some extent.

Reasonable minds cannot differ as to the following facts in the record and inferences flowing therefrom. The removal of the blown or wrecked engine from plaintiff's automobile to examine it to see if the manufacturer, under the manufacturer's warranty given to plaintiff, would replace the engine free of charge a second time was necessary and a benefit to the plaintiff. It was necessary to remove the engine to examine it, and the automobile could not be repaired unless the engine was removed for examination. Such removal and examination of the engine by defendant was an expenditure of labor and skill and imparted additional value and improvement to the automobile. If plaintiff thereafter had installed a new engine, the old, inoper-

(

able engine having been removed, the cost of installation thereafter theoretically would be less than the installation of a new engine plus the prior removal of the old, inoperable engine. For these reasons and to this extent, the removal of the old, useless engine constituted bestowing labor and skill on plaintiff's automobile, improving it and thereby enhancing its value. Ergo, defendant had an artisan's lien.

Webster's Third New International Dictionary (1961) defines "improve" as follows: 1.a: to make greater in amount or degree; Increase, augment, enlarge, intensify * * * 2.a: to enhance in value or quality * * *."

The following appears to be the law in Ohio:

"It is undoubtedly true, that when a person from the nature of his occupation, receives, and is at trouble or expense about the personal property of another, he has a lien upon, and may retain it, until his contract price, or his reasonable charges therefor are paid." *Wrightson* v. *Bettinger* (1887), 2 C. C. 381, 383.

"A common law lien is the right of a person to retain that which is in his possession, but belonging to another, until certain demands—usually payment for services and repairs—are paid by the owner. * * * The right of the artisan who furnishes materials or performs labor on chattel property to a lien on such property for the reasonable or contractual value while he retains such chattel property continuously in his possession is of ancient origin. It has been consistently recognized in Ohio even though the legislature has never created such a lien." *Justice* v. *Bussard* (1953), 114 N. E. 2d 305, 308.

"And the privilege of a particular lien * * * has been extended to other persons, in a variety of cases, where such persons by their labor and skill have imparted an additional value to the goods. This includes artisans, tradesmen, mechanics and laborers who receive property (although not obliged to receive it) for the purpose of mending, repairing, and improving its condition for hire, and they have, by the common law, a lien on such property until the reasonable charges for their labor and expenses

thereon are paid." *George* v. *Walton* (1942), 43 N. E. 2d 515, 517.

"A mechanic at common law had a lien on all personal property for repairs (persons having by common law the right to retain goods on which they have bestowed labor, until their reasonable charges therefor are paid. * * *)" *Bankers Commercial Security Company, supra.*

"* * * [B]y the well settled provisions of the common law, which will be fully recognized by this Court, an artisan who performs labor, lends skill, or furnishes material for the building or repair of chattel property has a lien upon the chattel to which he has contributed his labor, skill, or material while he retains such chattel property in his possession." *Metropolitan Securities Co.* v. *Orlow* (1923), 107 Ohio St. 583.

"At common law a mechanic or artisan who, with the consent of the owner, does work upon or adds materials to a chattel has a lien." *North End Auto Park* v. *Petringa Trucking Co.* (1958), 337 Mass. 618, 623, 150 N. E. 2d 735, 738, 587.

The defendant's sole assignment of error is well taken. The judgment of the Common Pleas Court on the jury verdict for plaintiff is reversed at the costs of plaintiff, the jury verdict for plaintiff is vacated and set aside, and pursuant to App. R. 12(B), coming now to enter the judgment which the trial court should have rendered, a final judgment is hereby rendered in favor of the defendant and against the plaintiff and the plaintiff's complaint is hereby dismissed. This cause is remanded to the Common Pleas Court for execution of this judgment and for costs.

*Judgment reversed.*

CONNORS and MOORHEAD, JJ., concur.

MOORHEAD, J., retired, of the Court of Common Pleas of Hancock County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.