THE CHURCH OF BIBLE UNDERSTANDING, APPELLEE AND CROSS-APPELLANT, *v.* BILL SWAD LEASING CO., APPELLEE; BECKETT AVIATION CORP., APPELLANT AND CROSS-APPELLEE.

(No. 80AP-624—Decided May 14, 1981.)

*Mr. Jack R. Graf, Jr.,* for appellee and cross-appellant.

*Mr. Henry Masek,* for appellee.

*Messrs. Harrington, Huxley & Smith* and *Mr. Fred S. Coombs, III,* for appellant and cross-appellee.

STRAUSBAUGH, P.J. This is an appeal from a decision of the common pleas court rendering judgment in favor of plaintiff against defendant Beckett Aviation Corporation (hereinafter referred to as Beckett), and dismissing defendant Bill Swad Leasing Company (hereinafter referred to as Swad).

Swad was the owner of a plane, which was the subject matter of a lease entered into between Swad and plaintiff. Pursuant to the terms of said lease, the plane was delivered to Beckett for inspection, maintenance and repairs. Prior to its delivery in April 1978, Swad owed Beckett money for previous repair and maintenance to said plane.

Upon completion of the work, Beckett refused to release its possession of the plane until Swad's account was paid in full. In order to obtain release of the plane, Swad tendered a check on April 27, 1978 to Beckett in the amount of $12,373.99. Upon receipt of the check, Beckett surrendered possession of the plane to plaintiff. Four days later Beckett received notification that Swad had stopped payment on the check. Swad's account with Beckett is the subject of a pending lawsuit in Trumbull County.

In October 1978, plaintiff brought the plane to Beckett for the purpose of further maintenance and repair. At that time, Beckett attempted to reassert its lien and refused to release the plane to plaintiff. However, possession was returned to plaintiff after the parties entered into an agreement whereby Beckett agreed to forego its claim to immediate actual possession in return for plaintiff's acknowledgment that continued constructive possession was to be with Beckett, and agreed to return actual possession to Beckett upon proper notice.

The plane was brought to Beckett on June 28, 1979 for more repairs and maintenance. At that point, Beckett exercised its right to actual possession under the agreement. Plaintiff filed a complaint for injunctive relief and damages arising out of Beckett's failure to deliver possession of the airplane. The trial court issued a temporary restraining order ordering Beckett to deliver the plane, upon plaintiff's payment of $852.05 to Beckett, the cost of the repairs recently made, and the posting of a bond by plaintiff in the amount of $7,302.54. After a hearing, the trial court granted plaintiff a judgment in

the amount of $4,082 against Beckett, dismissed Swad from the suit, and ordered that the bond posted by plaintiff be released.

In appealing the judgment of the trial court, Beckett raises the following assignments of error:

"I. The trial court committed prejudicial error in holding that Beckett could not re-assert its possessory repairman's lien.

"II. The trial court's holding that the agreement of October 19, 1978 between Church and Beckett was unconscionable and fraudulent is not supported by the weight of the evidence.

"III. The trial court's holding that the possession of the airplane in July, 1979 was solely pursuant to. the claimed repairman's lien is not supported by the evidence.

"IV. The trial court committed prejudicial error in computing its award of damages to Church."

In support of the first assignment of error, Beckett contends that, because the plane was released as a result of Swad's tender of a worthless check in April 1978, the artisan's lien created by R.C. 1333.41 could be reasserted against plaintiff. In reviewing the evidence presented, the trial court made the following conclusions of law relating to the first assignment of error:

"1. Beckett never had a valid possessory repairman's lien against the Church. Beckett voluntarily released the airplane to the Church in April, 1978.

"2. Beckett's attempt to re-assert an invalid lien still leaves them with an invalid lien. This court is not aware of any law that gives Beckett a valid lien after they voluntarily released the airplane to the Church. Counsel for Beckett has not provided this court with any authority to support such a claim against an innocent third party."

The following language from R.C. 1333.41 reflects a statutory adoption of the common law concept of liens created in favor of those who improve or repair goods.

"Every bailee for hire performing work or furnishing material on personal property other than motor vehicles as defined in section 4501.01 of the Revised Code at the request of the owner shall have a lien upon such property for the charge for such work and materials furnished by such bailee for hire and cost of notifications provided for in this section, and may sell the same pursuant to the following provisions. * * *"

Based on the above statute, it is clear that Beckett had a lien upon the plane in question at the time it refused to deliver the plane in April 1978. Plaintiff and Swad assert, however, that once Beckett turned the plane over to plaintiff that Beckett's lien on the plane was destroyed. We disagree.

While R.C. 1333.41 gave statutory recognition to an artisan's or repairman's lien, said statute is void of any language concerning the formation and continued existence of such lien. Therefore, we must turn to the common law development which preceded the statutory adoption to determine whether Beckett's lien continued to exist after said party had delivered the plane to plaintiff upon Swad's tender of the check.

Under the common law, possession of the property was necessary for the lien to attach to said property and for its continuance. *Metropolitan Securities Co.* v. *Orlow* (1923), 107 Ohio St. 583. In the absence of any filing requirement, possession by the provider of services was required for the purpose of giving notice to all third parties of the existence of said lien. Therefore, it was found that the *voluntary* surrender of the possession of the chattel, by one attempting to assert an artisan's lien, resulted in the loss of said lien forever. *American Security Corp.* v. *Martin* (1948), 83 Ohio App. 477 [37 O.O. 506]. However, as stated in 34 Ohio Jurisprudence 2d 423, Liens, Section 13, "* * * the surrender of possession

must be voluntary, for if the lien claimant is improperly deprived of his possession, as, for instance, by fraud, * * * the lien is not lost. * * *"

An examination of the record reveals that Beckett only released the plane upon the tender of a check by Swad in the full amount for past services performed by Beckett, a check which Swad intended to stop payment on at the time of its tender. By such a fraudulent act, possession was surrendered by Beckett; however, the lien which was previously created was not destroyed. Therefore, Beckett's lien on the plane for the costs of materials and services performed continued to exist.

With the above finding, we are now faced with the issue of whether Beckett's lien on the plane was enforceable against plaintiff, a third-party lessee. In ruling upon such an issue, there are two conflicting interests involved. One is the interest of mechanics, artisans, laborers, and repairmen to recover fair compensation by direct lien on the property upon which they had expended services and materials to improve the value thereof. The other interest is in keeping goods moving in the free flow of commerce in conjunction with the interest of third parties who purchase or lease said property after it has been improved.

In weighing the equities we are forced to find for plaintiff, a third-party lessee. In plaintiff's situation, there was nothing plaintiff could have done to protect its interest in the plane. Although the record reveals plaintiff had notice of the dispute between Swad and Beckett, there is no indication that plaintiff knew of Swad's intent to tender a check to Beckett, put plaintiff in possession as lessee, and then stop payment of the check. Plaintiff had no reason to know that, once Beckett had received the check from Swad and had released the plane to it, that Beckett would have any reason to attempt to assert a possessory interest in the plane. On the other hand, Beckett could have taken measures to assure that it received full payment for services performed, including keeping possession of the plane. Additionally, it should be pointed out that Beckett still may proceed against Swad on the account and on the check.

Therefore, we find that, although Beckett's lien against the plane was not extinguished when it surrendered possession of the plane, said lien could not be enforced against plaintiff, a third-party lessee, to obtain possession. Accordingly, Beckett's first assignment of error is not well taken and is overruled.

Because of the nature of the second and third assignments of error, they will be treated jointly. In support of the second and third assignments of error, Beckett contends that the trial court erred in finding that the agreement entered into between plaintiff and Beckett was unconscionable, fraudulent, and unenforceable. We agree. A review of the facts of this case indicates that approximately six months after plaintiff first acquired possession of the plane, said plane was returned to Beckett for further maintenance and repairs. At that point, representatives of Beckett indicated that it would not return possession to plaintiff, Beckett still being unpaid by Swad for past services performed on said plane. In order to solve the dispute concerning possession of the plane, Beckett and plaintiff entered into an agreement whereby Beckett agreed to forego its claim to immediate actual possession in return for plaintiff's acknowledgment that continued constructive possession of the plane belonged to Beckett, and plaintiff's agreement to return actual possession to Beckett upon proper notice.

An examination of the record reveals no evidence of fraudulent activity on behalf of Beckett in its dealings with plaintiff concerning the agreement. Plaintiff asserts that it was unconscionable for Beckett to attempt to reassert a right that it, in fact, did not have. Plaintiff's argument goes to the lack of consideration in said agreement based upon the fact that

Beckett never had a claim to possession of the plane against plaintiff. We adopt the following statement from the case of *Forester* v. *Scott* (1973), 38 Ohio App. 2d 15, at 18 [67 O.O.2d 158] (footnotes omitted):

"In this regard, there has emerged a divergency of views regarding the legal significance which should be attached to a forbearance based on an invalid claim. The earliest decisions took the fairly strict position that the surrender of an invalid claim can never be valid consideration because no real detriment is suffered by the claimant. Later decisions assuaged the harshness of this view by holding that a claim can be reasonably doubtful and still be a valid claim whose surrender would be sufficient consideration to support a contract. Finally, the modern trend of authority is to move still further away from an objective view of the actual validity of the surrendered claim and to focus primarily on whether the claimant's subjective belief in its legitimacy is honest and sincere; the only remnants of an objective standard are that the asserted claim must not be 'frivolous, vexatious, or unlawful' and that asserted good faith belief 'would affront the intelligence of ordinary and reasonable layman.' Compared to the first cases on the subject, the most recent ones clearly require a minimal degree of objective certainty in the existent validity of the surrendered claim."

The record clearly indicates that, throughout the dispute with plaintiff and Swad, Beckett's claim to possession, by virtue of its lien, was made in good faith, with an honest and reasonable belief that the claim for possession was supported by law. In short, we find no evidence to support the finding by the trial court that said agreement was fraudulently induced or in any way unconscionable. Plaintiff argues that it had no alternative but to enter into said agreement to secure possession of the plane. This argument has no merit in light of the fact that, when Beckett did assert its right to possession under said agreement in June 1979, plaintiff promptly filed for a temporary restraining order. Plaintiff could have chosen to do the same in October 1978, rather than enter into said agreement with Beckett.

Based on our findings stated above, we find that Beckett and plaintiff entered into a valid, enforceable agreement entitling Beckett to take actual possession of the plane following proper notice. Accordingly, Beckett's second and third assignments of error are well taken and are sustained.

In support of the fourth assignment of error, Beckett argues that the trial court erred in computing its award of damages in favor of plaintiff. In light of our ruling on the previous assignments of error, in which we found error in the trial court awarding judgment in favor of plaintiff, we agree. Beckett's fourth assignment of error is, therefore, well taken and is sustained.

Plaintiff also filed an appeal from the judgment of the trial court claiming that the trial court erred in dismissing Swad from the suit. In support of its assignment of error, plaintiff claims that Swad breached several provisions in the lease. Specifically, plaintiff claims Swad breached the following provisions of the lease:

"* * * LESSOR warrants that it is the sole and absolute owner of the aircraft herein leased, except for a mortgage which it has executed in favor of BancOhio/Ohio National Bank of Cols., that it has the right to lease the aircraft to the LESSEE, that it will do nothing to disturb LESSEE'S full right of possession and enjoyment of the aircraft, and the exercise of all of LESSEE'S rights with respect thereto, as provided by this Agreement. LESSOR and LESSEE agree that this lease is subject to and inferior to the said Mortgage to BancOhio/Ohio National Bank of Cols. covering the aircraft leased.

"* * *

"3. * * * Lessor warrants its title to the airplane forming the subject matter of this lease, subject only to lien of the BancOhio/Ohio National Bank of Columbus and upon full compliance by Lessee with the terms of the lease-purchase agreement, title will be transferred to Lessee free and clear of any liens, claims, charges, or encumbrances, at which time Lessor shall execute a bill of sale granting good and merchantable title to the aircraft."

As stated previously, Beckett had a lien on the plane for the value of services previously performed when plaintiff was originally allowed to take possession. By virtue of the existence of the lien, Swad breached the above provisions in the lease.

Accordingly, plaintiff's assignment of error is well taken and is sustained. The judgment by the trial court in favor of plaintiff and against Beckett is reversed and remanded. The decision of the trial court to dismiss Swad from the cause of action is also reversed and remanded.

*Judgment reversed and case remanded.*

WHITESIDE and NORRIS, JJ., concur.