In re MARK S. KAPLAN, INC., Debtor.

Bankruptcy No. 2-83-00263.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 14, 1984.

Louis W. Cennamo, Columbus, Ohio, for creditor.

Daniel F. Carmack, Columbus, Ohio, trustee.

## ORDER ON SECURED STATUS OF MIDWEST DIAMOND SETTERS

G. L. PETTIGREW, Bankruptcy Judge.

The matter before the Court is the trustee's objection to the validity and extent of the common law artisan's lien claimed by Midwest Diamond Setters (Midwest). For the reasons set out below, the Court finds that Midwest is secured by such a lien for $100.00, but that the balance of its claim is unsecured.

### Findings of Fact

The debtor in this converted Chapter 7 proceeding was engaged in the jewelry business prior to its financial demise. During its operations, it acquired numerous pieces of jewelry that needed repair in order to be profitably marketed. To fulfill these needs, the debtor on several occasions turned to Midwest. Midwest would repair the jewelry brought to it by the debtor. It often returned the repaired jewelry without being paid, dealing with the debtor on an "open account" basis. During this course of dealing, the debtor built up an indebtedness of approximately $2,700.00 to Midwest before filing its voluntary petition for relief.

At the time of filing, Midwest had several pieces of the debtor's jewelry in its possession. It completed the repairs needed on these items and retained possession of them. The trustee later had other items sent to Midwest for repair, for which Midwest was paid, pursuant to this Court's order of July 26, 1984.

On December 14, 1983, this Court ordered Midwest to turn over to the trustee those items still in Midwest's possession which were originally brought to Midwest by the debtor. That order provided that any liens that may have attached to those items would attach to the funds generated by their sale.

The items were eventually sold and, as a result of Midwest's repairs, brought an amount substantially more than the reasonable value of the repairs made on those items, which this Court finds to be $100.00.

### Arguments of the Parties

Midwest maintains that it has, by virtue of its repairs and possession of the items in question, a common law artisan's lien on the funds generated by the sale of those goods. Moreover, it argues that its lien secures the payment of all liability resulting from the repair of any jewelry brought to it by the debtor, in spite of the fact that Midwest voluntarily relinquished possession of the vast majority of such jewelry without being paid.

The trustee, on the other hand, argues that while Midwest may be secured for the reasonable value of repairs to the property it retained, it can obtain no lien for the work done on the jewelry not in its possession at the date of filing, without a separate security agreement. No such security agreements were executed. Hence, the trustee objects to Midwest's being treated as secured for more than the reasonable value of its repairs to the jewelry in its possession at the time of the debtor's bankruptcy.

### Conclusions of Law

As is obvious from the foregoing, this controversy centers on the validity and extent of the artisan's lien claimed by Midwest. Such liens have their origin in common law. *Metropolitan Securities Co. v. Orlow*, 107 Ohio St. 583, 140 N.E. 306 (1923); *The Church of Bible Understanding v. Bill Swad Leasing Co.*, 2 Ohio App.3d 382, 2 O.B.R. 455, 442 N.E.2d 78 (1981); *Justice v. Bussard*, 65 O.L.A. 461, 114 N.E.2d 305 (Muni.Ct.1953). Until relatively recently, they were not controlled by statute in Ohio. However, in the early 1960s, the Ohio General Assembly enacted what has become § 1333.41 of the Ohio Revised Code. Although this statute recognizes the existence of such liens and sets out procedures for their foreclosure, it "...

is void of any language concerning the formation and continued existence of such a lien. Therefore, we must turn to the common law development which preceded the adoption. . . ." *The Church of Bible Understanding, supra,* at 2 O.B.R. 456, 442 N.E.2d 78.

■ According to the common law of Ohio, an artisan's lien will arise if four conditions are met. The first is that the lienor must have come into possession of personal property by virtue of the owner's delivery or entrustment of it to the lienor. *Shearer v. Bill Garlic Motors, Inc.,* 59 Ohio App.2d 320, 324, 394 N.E.2d 1014 (1977) [quoting *Northend Auto Park v. Petringa Trucking Co.,* 337 Mass. 618, 623, 150 N.E.2d 735 (1958)]. Secondly, the owner must have delivered or entrusted the property for the purpose of its improvement or repair, which must occur by virtue of the lienor's actions. *Shearer, supra; Metropolitan Securities Co., supra.* Third, the owner must fail to pay for the repairs or improvements. *Bankers Commercial Security Co. v. Coffman,* 22 N.P. (ns) 193 (C.P.1919). Finally, the lienor must retain possession of the property. *The Church of Bible Understanding, supra; Defiance Production Credit Association v. Hake,* 70 Ohio App.2d 185, 187, 435 N.E.2d 692, 694 (1980); *American Security Corp. v. Martin,* 83 Ohio App. 477, 84 N.E.2d 306 (1948).

Applying the foregoing criteria to the facts of this case, it becomes clear that Midwest did indeed have a lien on the goods it turned over to the trustee pursuant to this Court's order of December 14, 1983. However, the extent of this lien is not as clear. It appears that the Ohio courts have not yet confronted the question presented by this case.

Counsel for Midwest relies on an annotation found at 25 A.L.R.2d 1038 as authority for the proposition that a possessory artisan's lien secures not only to the value of the services rendered in regard to retained property, but also secures the other debts owed to the artisan by the owner of the property. While the cases cited in the an-

notation do stand for such a proposition, this Court does not feel that they are controlling, both because they are distinguishable from the case at bar and because those Ohio cases which have considered the subject of artisans' liens in general seem to imply that a different result would be reached in Ohio.

The cases cited in the annotation, as well as the case preceding the annotation, each contain fact patterns in which the owner had a single contract with the lienor to work on the encumbered property. The lienors did at least some portion of the work and released some portion of the property to the owner before receiving any payment. The lienors each retained some portion of the owner's property and sought, as does Midwest, to secure the payment of the entire debt from that portion of the owner's property which they retained. In all but one of these cases, the courts approved of such practices. However, the courts all noted that such a result occurred because the lienor's possession of the goods, as well as his right to payment, arose out of a single, entire contract. Other courts have employed a similar analysis, *United States v. Toys of The World Club, Inc.,* 288 F.2d 89, 94 (2d Cir.1961); *In re Tele King Corporation,* 137 F.Supp. 633 (S.D.N.Y.1955), and this Court finds such analysis persuasive.

■ However, in the instant case, no single contract gave rise to debts which Midwest seeks to secure. Instead, the evidence produced at trial indicated that a series of distinct contracts gave rise to the debts in question. Hence, this case is distinguishable from the cases cited in the annotation. In cases such as this, other courts have ruled that because of the disparate sources of the debts, the possessory liens of the artisans only secured those debts which arose by virtue of the specific contract which resulted in the lienor's possession of the retained goods. *Berlet v. Lehigh Silk Mills,* 287 F. 769 (3d Cir. 1923); *In re Lindau,* 183 F. 608 (S.D.N.Y. 1910); *Owcharoffsky v. Lambert,* 135 N.Y.S. 599 (Sup.1912); *Quad/Graphics,*

*Inc. v. R.L. Newport & Co.*, 10 B.R. 436, 438 (Bky.S.D.N.Y.1981); *Hartshorne v. Johnson*, 7 N.J.L. 108 (1823). This Court finds these authorities to be quite persuasive and hence adopts their analyses.

This Court finds further reinforcement for its holding in this matter from the language of those Ohio cases which have considered the general nature of artisans' liens. As mentioned earlier, there are no reported Ohio cases concerning the precise question presented in this case. However, those cases which have discussed the requisites of an artisan's lien share a common thread stressing the need for the lienor to retain possession of the encumbered property. The following statement by the Ohio Supreme Court is illustrative of this pattern:

"... [B]y the well settled provisions of the common law, which will be fully recognized by this Court, an artisan who performs labor, lends skill, or furnishes material for the building or repair of chattel property has a lien *Upon the chattel to which he has contributed his labor, skill, or material* WHILE HE RETAINS SUCH CHATTEL PROPERTY IN HIS POSSESSION." *Metropolitan Securities Co., supra*, 107 Ohio St., at 587, 140 N.E. 306 (emphasis added)

Similar statements can be found in the following excerpts from Ohio appellate opinions:

"... The right of the artisan who furnishes materials or performs labor on chattel property to *a lien on such property* for the reasonable or contractual value WHILE HE RETAINS SUCH *chattel* property continuously in his possession is of ancient origin." *Justice v. Bussard, supra*, 65 O.L.A. at 464, 114 N.E.2d 305.

"And the privilege of a particular lien ... has been extended to other persons, in a variety of cases, where such persons by their labor and skill have imparted an additional value to the goods. This includes artisans, tradesmen, mechanics and laborers who receive property (although not obliged to receive it) for the purpose of mending, repairing, and im-

proving its condition for hire, and they *have, by the common law, a lien on* SUCH *property until the reasonable charges for their labor and expenses thereon are paid." George v. Walton*, 43 N.E.2d 515, 517 (App.1942) (quoting 33 American Jurisprudence 426)

"'... [I]f a party has bestowed labor and skill on a chattel bailed to him for such purpose, and thereby improved it, he has by general law a lien on it for the reasonable value of his labor or the right to retain it until paid for SUCH skill and labor.'" *Bankers Commercial Security Company v. Coffman, supra.*

While none of the above quoted cases involved fact patterns such as the instant case, where the lienor retained only part of the improved property, and none expressly state that the result reached by this Court would follow in a similar situation, it seems that such a conclusion can be inferred from the language of these opinions. All stress that the lienor has a lien on property *in his possession* for services improving *such property*. The cases dwell on the improvement of the specific *res* retained by the artisan as the source of the debt secured by the *res*. There is no indication, either expressly or by implication, that the retained property secures any debt not arising from that property itself. Since federal courts, when confronted with unsettled question of state law, should give due deference to the doctrinal trends of related state court decisions *Becker v. Interstate Properties*, 569 F.2d 1203 (3rd Cir.1978) and should not arrive at conclusions that would conflict with what state law there is on the point, *Goranson v. Kloeb*, 308 F.2d 655 (6th Cir.1962), this Court declines to accept Midwest's arguments as to the extent of its lien.

Therefore, this Court ORDERS that Midwest's claim be treated as secured for $100.00, the reasonable value of the services rendered to the encumbered property, and unsecured for the balance of its claim.

IT IS SO ORDERED.